Joseph Wilson FINDLAY, Jr., Appellant,

v.

The CITY OF TULSA, Oklahoma, Appellee.

No. M–76–674.

Court of Criminal Appeals of Oklahoma.

March 17, 1977.

Thomas W. DeMond, Tulsa, for appellant.

Waldo F. Bales, City Atty., Edward J. Hicks, III, Asst. City Atty., City of Tulsa, for appellee.

## OPINION

BUSSEY, Presiding Judge.

Appellant, Joseph Wilson Findlay, Jr., hereinafter referred to as defendant, was charged in the Municipal Court of Record for the City of Tulsa, Oklahoma, Case No. 211275, with the offense of Public Intoxication in violation of 27, Tulsa Revised Ordinances, § 171. He was tried and convicted, with punishment being set at a fine of Twenty-Five ($25.00) Dollars and costs. From said judgment and sentence, a timely appeal has been perfected.

The State's first witness was Dan Marshall, police officer for the City of Tulsa, who testified that he was called to the scene of the arrest at approximately 3:00 a. m. on the 8th of February, 1976. Officer Marshall observed the defendant leaning against a food counter in a convenience store eating Fritos with a can of dip opened beside him; he was staring with a dazed look on his face; his eyes were dilated and very bloodshot; his face was dirty; and, he

had an odor of alcohol on his breath. Officer Marshall inquired if he was going to pay for the Fritos and dip, and upon his affirmation asked him to do so. Officer Marshall observed the defendant's slurred speech and staggered walk. After defendant paid for the items he was asked by the officer to accompany him to his police unit where he was placed under arrest and informed of his rights. When asked by Officer Marshall if he had a car at that location, defendant replied that he did not and that he knew better than to drive a car in his present condition—admitting that he was drunk.

The State's final witness was Martin Wayne Hudson, also a police officer for the City of Tulsa, whose testimony largely served to corroborate that of Officer Marshall. Subsequent to this testimony the State rested its case.

The first witness for the defense was Jeffrey Paul Steinborn, an employee at the Seven Eleven Store where the defendant was arrested. He testified that on the morning in question the defendant entered the store and began to eat Fritos without first paying for them. Observing that the defendant appeared to be drunk, this witness called the police. Steinborn stated that the defendant did not disturb the peace.

The defendant then took the stand in his own defense. He admitted to having consumed three double scotches between 11:00 p. m. and 2:30 a. m. in addition to three beers earlier in the evening. However, he interjected that at approximately 1:30 a. m. he took a prescription drug called Librax to control stomach pains, which he knew to make him "kind of woozy"; however, he claimed to be completely uninformed as to the side effects of said drug.

The final witness for the defense was Lester David Sparks, a pharmacist, who testified as to the side effects of the drug Librax. He stated that there is a synergistic effect between alcohol and Librax; a phenomenon whereby one drug enhances the effect of the other and vice versa; and, that the drug Librax was known to some-

times produce a side effect called ataxia, or stupor, which could account for the stagger and slurred speech. At this point the defense rested its case.

The defendant's first assignment of error is the trial court's denial of defendant's motion for a trial by jury. Defendant contends that said denial of trial by jury violates his Fourteenth Amendment right to equal protection, based upon the proposition that the defendant was denied trial by jury solely on the basis of geography, that is, where and by whom he was arrested. The discrimination asserted by the defendant is that had he been charged and tried in a District Court of this State under 37 O.S. 1971, § 8, for public intoxication he would have been entitled to a jury trial, since the penalty provided for therein includes incarceration for a period of not less than five (5) days nor more than thirty (30) days in addition to a fine of not less than Ten ($10.00) Dollars nor more than One Hundred ($100.00) Dollars; however, because he was charged and tried in a municipal court, under Title 27, Tulsa Revised Ordinances, § 174, he was denied a jury trial since the penalty is only a fine not in excess of Fifty ($50.00) Dollars. This is so because of statutory and constitutional provisions discussed *infra*.

The defendant does not maintain that equal protection requires that the penalty assessed by the State and the City of Tulsa must be equal. Furthermore, this Court has previously held that where the penalty assessed by a municipal court is within the range of punishment provided by State statute, with reference to punishment for the offense in question, the defendant is in no position to claim lack of equal protection concerning punishment. *Butler v. State,* Okl.Cr., 502 P.2d 356 (1972). However, the defendant contends that regardless of the range of punishment to be assessed he should have been provided a trial by jury if such would have been provided for in the District Court, if charged for the same offense under the applicable statute.

While both the United States Constitution and Oklahoma State Constitution rec-

ognize a right to trial by jury, it is also recognized that this is a limited right. The Supreme Court of the United States, recognizing that the extent of potential criminal liability is a rational basis for limiting the right to jury trial, stated in *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), that:

". . . It is doubtless true that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision and should not be subject to the Fourteenth Amendment jury trial requirement here applied to the States. . . . But the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not and may in itself, if severe enough, subject the trial to the mandates of the Sixth Amendment. . . ." (Citations omitted) 391 U.S. at 159, 88 S.Ct. at 1453)

Likewise, the Constitution of the State of Oklahoma explicitly provides for trial by jury in criminal cases only when the punishment for the offense charged includes incarceration or when a fine may be assessed in excess of One Hundred ($100.00) Dollars. Oklahoma Constitution, Art. II, § 19.

Furthermore, certain municipal courts were established by the Legislature, 11 O.S. 1971, § 781, to hear and to determine violations of municipal ordinances; and, as an apparent added protection in these circumstances maximum punishments were provided, and right to trial by jury was expressly provided for in cases where the potential penalty by fine was in excess of Fifty ($50.00) Dollars. Title 11 O.S.1971, § 782.

The defendant in this case had no right to a trial by jury because the potential punishment for the offense charged under the municipal ordinance did not reach the constitutional and statutory thresholds. In addition, this does not constitute a violation of the defendant's right to equal protection. The decision concerning the defendant's right to trial by jury was made with reference to the same rules governing right to trial by jury which are applied, without

exception, throughout the entire State of Oklahoma. So, for the above and foregoing reasons this Court finds the defendant's first assignment of error to be without merit.

The defendant's second assignment of error is the trial court's denial of the defendant's motion to dismiss and/or quash for the reason that 27, Tulsa Revised Ordinances, § 171, is unconstitutional on its face. The defendant bases this contention on the proposition that said ordinance is vague and overbroad, and therefore violates the due process clause of the Fourteenth Amendment. Said ordinance provides as follows:

"It shall be an offense for any person to be drunk or in a state of intoxication in any street, avenue, alley, park or other place open to the public."

In effect, the defendant contends that the term "public intoxication" is too general and lacks sufficient definition in the State of Oklahoma. This Court in *Synnott v. State,* Okl.Cr., 515 P.2d 1154, 1157 (1973), stated:

". . . The concept that a facially vague statute is unconstitutional rests upon the constitutional foundation of procedural due process which requires in the interest of fundamental fairness adequate notice of what conduct is proscribed and adequate standards for the adjudication of the offense by judge and jury. If this statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its application, it is unconstitutional. . . ." (Citations omitted)

However, this Court in *Synnott v. State,* supra, also reiterated that:

"[O]nly reasonable certainty is required [citation omitted] and it is elementary that the prohibited act may be characterized by a general term without definition if that term has a settled and commonly understood meaning which does not leave a person of ordinary intelligence in doubt. This is true although there may be in the definition of the term an element of de-

gree as to which reasonable men might differ." 515 P.2d at 1157.

The condition of being in a state of intoxication is a matter of general knowledge, the meaning of which is sufficiently "settled and commonly understood" so that definite and sensible definition may be made of the words of the ordinance in question. This is true whether the term "intoxication" is used in reference to intoxication as a result of consumption of intoxicating liquor or any other intoxicating substance.

In *Gault v. State,* 42 Okl.Cr. 89, 274 P. 687, 688 (1929), this Court alluded to a definition of intoxication which is at least adequate to convey the commonly accepted meaning of said term, to wit:

"[A] person is drunk in a legal sense when so far under the influence of liquor that his passions are visibly excited or his judgment impaired by the liquor. . ." (Citations omitted)

While this definition had reference to a state of intoxication induced by consumption of intoxicating liquor, it is readily applicable to a state of intoxication induced by any intoxicating substance since the condition at which the prohibition in question is aimed is such that a person's faculties are materially impaired, e. g., impaired judgment and responses.

It is important to remember that the objective of a statute or ordinance prohibiting public intoxication is to protect the public, and it is apparent that the lawmakers intended to ban all drunk or intoxicated persons from all places where the public has a right to be, and where such person is apt to come in contact with or annoy the public. *Application of Hendrix,* Okl.Ct.App., 539 P.2d 1402 (1975). For this reason it is not necessary that an individual be in the act of causing a disturbance of the peace to sustain a charge of public intoxication. The elements of the offense are simple and are expressly stated in the ordinance under review, to wit: (1) being in a state of intoxication and (2) in a public place.

Furthermore, the symptoms of intoxication are also a matter of common knowledge and understanding as an adjunct to the definition itself. They are the outward manifestations of impaired mental judgment and physical responses. While these may also be symptomatic of other physical impairments, such other physical impairments are usually subject to on the spot explanation and are generally distinguishable by reference to symptoms respectively characteristic to a condition which results from the consumption of the various intoxicating substances.

Therefore, it is the opinion of this Court that since the prohibition against public intoxication is well defined and well within the province of the State or municipality to regulate, the defendant's assertion that the ordinance in question is vague and overbroad is found to be without merit.

The defendant's third assignment of error is that his arrest was illegal, and that the trial court committed error in denying the motion to suppress the evidence obtained as a result of the illegal arrest. A review of the record clearly establishes the officer observed a public offense. See, 22 O.S.Supp.1975, § 196. Therefore, defendant's third assignment of error is frivolous.

The defendant's fourth assignment of error concerns the trial court's failure to sustain defendant's motion to dismiss arising from suppression of evidence material and favorable to his case by the prosecution. This contention is based upon the fact that the defendant's request for blood test or breath test was denied by the Tulsa City Police, as is the policy in cases of public intoxication.

While there is authority in Oklahoma for the proposition that existing evidence favorable to the defendant should not be suppressed by the prosecution, *Blevens v. State,* Okl.Cr., 487 P.2d 991 (1971), there is no authority in Oklahoma for the proposition that law enforcement agencies must administer tests such as blood and breath tests at a defendant's request. We are not unmindful that a minority of jurisdictions allow one charged with public intoxication to summon a physician at his own expense.

See, *In Re Newbern,* 175 Cal.App.2d 862, 1 Cal.Rptr. 80 (1959); 78 A.L.R.2d 905. However, we decline to adopt such a rule; the gravamen of the offense and the punishment provided therefor is not so severe as to require summoning a physician, administering a breathalyzer, or transporting the defendant to the hospital in each and every case of public intoxication. Clearly, in each and every case it would have to be, because a rule allowing those with means to summons a physician would give rise to the need for a pre-incarceration indigency test so that those without means could obtain the same opportunity. However, in the public intoxication cases the ability to obtain evidence, which may or may not support the defense, must give way to the orderly administration of the law; the half hour spent administering the breathalyzer, necessitating frequent recharge of the equipment, or the time spent escorting prisoners about for a blood test can be much better spent in the interest and protection of the public against more serious crimes. Therefore, in weighing the gravamen of the offense and the maximum possible punishment against the public interest in law enforcement generally, it is our opinion that the defendant was not entitled to a breathalyzer or blood test. We note that the law provides that the defendant be allowed a phone call which sufficiently protects him against unlawful arrest and detention. Further, the public has an interest in being protected in person and in property from the intoxicated; and, the very reason for their immediate detention is to allow the effects of the intoxicant to dissipate. Such detention could hardly be called a deliberate effort by the police aimed at suppressing evidence. For the foregoing reasons, defendant's fourth assignment of error is without merit.

The defendant's fifth assignment of error is that the trial court erred by ignoring a valid defense which the defendant contends was factually uncontroverted and as a matter of law raises a reasonable doubt as to the defendant's guilt. The defense raised by the defendant was that the symptoms displayed by defendant at the time of arrest were due, in whole or part, to the ingestion of a prescription drug, Librax. It appears from the defendant's brief that this defense is based upon the proposition that the state of intoxication contemplated by Title 27, Tulsa Revised Ordinances, § 171, was such a state as induced by the consumption of liquor only, and that if otherwise induced the defendant would not be in violation of said ordinance.

■ The defendant bases his construction of the term "intoxication" on the holding of this Court in Syllabus one to *Gault v. State,* supra, that "The word 'drunk' is a synonym of the word 'intoxicated.'" However, after a careful reading of that case, it is apparent that this Court went no further in *Gault* than to hold that the state of drunkenness falls under the general definition of intoxication and in no way implied that to be the exclusive definition. Furthermore, it is apparent upon a reading of the analogous State statute, 37 O.S.Supp.1973, § 8, that as amended by the Legislature in 1973 this statute was meant to include such states of intoxication as are induced by other intoxicating substances as well as by liquor.

■ However, the question still stands as to whether the Tulsa City Ordinance under review was meant to include only such states of intoxication as are induced by liquor as opposed to a broader definition of the state of intoxication. This is clearly a problem of construction and this Court feels it would be reasonable to apply the same rules of construction as are applied to the statutes of this State. One common rule of construction is that a statute should be construed if possible so as to render every word, phrase and clause operative. *General Motors Corp., Argonaut Division v. Cook,* Okl., 528 P.2d 1110 (1974); *Olim v. W. E. Mayberry,* Okl., 524 P.2d 24 (1974). Also see paragraph 18 of the Syllabus to *Ex parte Lewis,* 85 Okl.Cr. 322, 188 P.2d 367 (1947). If the terms "drunk" and "in a state of intoxication" were construed to have strictly the same meaning, one of the terms would be redundant and not strictly necessary for the operation of the ordi-

nance. However, if these terms are construed as distinguishable and meant to indicate that the broader definition of intoxication had been adopted, all words of the ordinance would be completely operative.

 Lending weight to the latter construction is another rule of construction enunciated in *Magness v. State,* Okl.Cr., 476 P.2d 382, 383 (1970), wherein this Court stated, "We thus follow the general rule that the word 'or' in penal statutes is seldom used other than as a disjunctive." The application of this rule would imply that the drafters intended to distinguish the terms which were separated by the word "or."

 In addition, this Court finds merit in the City of Tulsa's contention that even if the defendant's restrictive definition of intoxication were accepted, there was sufficient evidence to support the verdict of the trial court. A review of the record indicates that the defendant, who was arrested at 3:00 a. m., admitted to consuming three double scotches between 11:00 p. m. and 2:30 a. m. on the night in question in addition to having had three beers earlier in the evening. It is apparent that this, by itself, could be sufficient to render an ordinary individual in a state of intoxication. Furthermore, the State put on evidence of the defendant's condition prior to and during arrest, that is, slurred speech and staggered walk. For the foregoing reasons we find the defendant's fifth assignment of error to be without merit.

The defendant's sixth and final assignment of error deals with the trial court's admission into evidence of statements and alleged confession made by the defendant without proof of a knowing waiver of his rights. However, upon even a cursory review of the record it is clearly apparent that the statements in question were unsolicited and voluntarily advanced by the defendant. Therefore, we find defendant's final assignment of error to be without merit.

For the above and foregoing reasons, the verdict of the trial court is *AFFIRMED.*

BLISS and BRETT, JJ., concur.