**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

CLYDE ALLEN RIFE,

     Plaintiff - Appellant,

v.

OKLAHOMA DEPARTMENT OF
PUBLIC SAFETY; JOE JEFFERSON,
State Trooper; CHAD DALE;
JONATHON WILLIS; MCCURTAIN
COUNTY JAIL TRUST,

     Defendants - Appellees.

No. 16-7019
(D.C. No. 6:14-CV-00333-FHS)
(E.D. Okla.)

———————————————————

**ORDER**
———————————————————

Before **LUCERO**, **McKAY**, and **BACHARACH**, Circuit Judges.
———————————————————

This matter is before the court on appellees McCurtain County Jail Trust, Chad

Dale and Jonathon Willis's *Petition for Rehearing En Banc*, as well as the separate

*Petition for Rehearing and Petition for Rehearing En Banc* filed by appellee Joe

Jefferson. We also have the appellant's response to those petitions.

Upon consideration, panel rehearing is granted in part and only to the extent of the

changes made to the amended opinion attached to this order. In all other respects panel

rehearing is denied by the original panel members.

The petitions, the response, as well as the amended opinion were also circulated to all the judges of the court who are in regular active service. As no judge on the original panel or the en banc court requested that a poll be called, the requests for en banc consideration are denied.

The Clerk is directed to file the attached amended opinion effective the date of this order.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

2

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CLYDE ALLEN RIFE,

      Plaintiff - Appellant,

v.

OKLAHOMA DEPARTMENT OF
PUBLIC SAFETY; JOE
JEFFERSON, State Trooper; CHAD
DALE; JONATHON WILLIS;
MCCURTAIN COUNTY JAIL
TRUST,

      Defendants - Appellees.

No. 16-7019

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:14-CV-00333-FHS)**
_____

Daniel E. Smolen (Robert M. Blakemore, with him on the briefs), Smolen,
Smolen & Roytman, PLLC, Tulsa, Oklahoma, for Plaintiff-Appellant.

Stephen L. Geries (Ammon J. Brisolara, with him on the brief), Collins
Zorn & Wagner, Oklahoma City, Oklahoma, for McCurtain County Jail
Trust, Chad Dale, and Jonathon Willis, Defendants-Appellees.

Devan A. Pederson, Assistant Attorney General, Oklahoma Attorney
General's Office, Oklahoma City, Oklahoma, for Oklahoma Department of
Public Safety, and Joe Jefferson, Defendants-Appellees.

_____

Before **LUCERO**, **McKAY**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This case began with the plaintiff, Mr. Clyde Rife, sitting on a motorcycle next to a road, unable to recall the date, the time, or even what he had been doing in a town he had just visited. When approached by a state trooper, Mr. Rife said that he was fine. Nonetheless, the trooper questioned Mr. Rife and concluded that he was intoxicated on pain medication and had been in a motorcycle accident. These conclusions led the trooper to arrest Mr. Rife for public intoxication. Authorities later learned that Mr. Rife had not been intoxicated; he had suffered a head injury in a motorcycle accident.

Mr. Rife ultimately sued the trooper and the Oklahoma Department of Public Safety, alleging in part that he had been wrongfully arrested. For this allegation, we ask: Did probable cause exist to arrest Mr. Rife? The district court said "yes," and we agree.

The rest of the case involves what happened after the arrest. After the arrest, the trooper drove Mr. Rife to jail. Along the way, Mr. Rife groaned and complained of pain in his heart and chest. Upon arriving at the jail, Mr. Rife was put in a holding cell. The scene was observed by a cellmate, who said that Mr. Rife had repeatedly complained about pain. Nonetheless, Mr. Rife was not provided medical attention.

2

The lack of medical care led Mr. Rife to sue (1) the trooper, two jail officials, and the entity operating the jail for deliberate indifference to serious medical needs and (2) the Oklahoma Department of Public Safety for negligent failure to provide medical care. On these claims, we ask: Did the failure to provide medical attention constitute (1) deliberate indifference to Mr. Rife's serious medical needs or (2) negligence? The district court thought no one could reasonably infer either deliberate indifference or negligence. We disagree, concluding that both could be reasonably inferred from the evidence.

These conclusions lead us to affirm in part, to reverse in part, and to remand for further proceedings.

## I.    Mr. Rife's Claims

Mr. Rife sued the trooper (Joe Jefferson), the two jail officials (Jonathon Willis and Chad Dale), the entity operating the jail (McCurtain County Jail Trust), and the Oklahoma Department of Public Safety.[1] With regard to the arrest, Mr. Rife makes two claims:

1.    Trooper Jefferson is liable under § 1983 for arresting Mr. Rife without probable cause.

---

[1]    The Oklahoma Department of Public Safety is a state agency. *See* Okla. Stat. tit. 47, § 2-101. Trooper Jefferson worked for the Oklahoma Highway Patrol, which is a division of the Oklahoma Department of Public Safety.

3

2. The Oklahoma Department of Public Safety incurs vicarious liability for the wrongful arrest under the Oklahoma Governmental Tort Claims Act.[2]

For the lack of medical attention after the arrest, Mr. Rife makes three claims:

1. Trooper Jefferson, Mr. Willis, and Mr. Dale are liable under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs.

2. The jail trust is liable under § 1983 for the deliberate indifference of jail employees.

3. The Oklahoma Department of Public Safety is vicariously liable under the Oklahoma Governmental Tort Claims Act for Trooper Jefferson's negligent failure to obtain medical attention.[3]

During the lawsuit, Mr. Rife discovered that the jail trust had destroyed a videotape that showed him in the jail's booking area. According to Mr. Rife, the destruction of the videotape warranted spoliation sanctions consisting of denial of the summary judgment motions brought by Mr. Willis, Mr. Dale, and the jail trust.

---

[2] The Oklahoma Governmental Tort Claims Act is codified at Okla. Stat. tit. 51, § 151 et seq. This law provides the exclusive tort remedy in Oklahoma for injured plaintiffs to recover against state entities. *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009). Under this law, state entities can generally incur liability for torts. *Id.* This liability may be based on the acts of state employees. *Id.*

[3] Mr. Rife also sued under the Oklahoma Constitution, but those claims are not involved in this appeal.

4

## II. The District Court's Rulings

The defendants moved for summary judgment, and the district court granted summary judgment to each defendant.

On the wrongful arrest claims, the district court granted summary judgment to Trooper Jefferson and the Oklahoma Department of Public Safety, concluding that probable cause existed for Mr. Rife's arrest.

On the claims involving a failure to provide medical attention, the court granted summary judgment to all defendants, reasoning that the lack of medical attention had not resulted from deliberate indifference or negligence.

In addition, the district court declined to sanction the jail trust, Mr. Willis, and Mr. Dale for destruction of the videotape, reasoning that Mr. Rife had failed to follow the proper procedure for requesting a spoliation sanction.

## III. Our Conclusions

We affirm the district court's orders in part, reverse in part, and remand for further proceedings.

On the wrongful arrest claims against Trooper Jefferson and the Oklahoma Department of Public Safety, we affirm, agreeing with the district court that probable cause existed for the arrest.

On the deliberate indifference claims, we reverse: A reasonable factfinder could find facts supporting the deliberate indifference claims

5

against Trooper Jefferson, Mr. Willis, Mr. Dale, and the jail trust. Thus, we reverse and remand for the district court to determine (1) whether Mr. Rife's rights were clearly established and (2) whether a reasonable factfinder could find a causal link between the jail trust's policies or customs and a constitutional violation.

On the negligence claim against the Oklahoma Department of Public Safety, we reverse, concluding that a genuine dispute of material fact exists on the reasonableness of Trooper Jefferson's failure to obtain medical attention.

In addition, we affirm the district court's denial of spoliation sanctions, concluding that Mr. Rife forfeited his present argument and has failed to identify evidence of bad faith.

## IV. Standard of Review

The district court concluded that the defendants were entitled to summary judgment. We review these conclusions de novo. *Koch v. City of Del City*, 660 F.3d 1228, 1237-38 (10th Cir. 2011). In applying de novo review, we consider the evidence in the light most favorable to Mr. Rife, resolving all factual disputes and drawing all reasonable inferences in his favor. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

We apply not only this standard of review but also the substantive burdens on the underlying issues. One such issue is qualified immunity, which is raised by Trooper Jefferson, Mr. Willis, and Mr. Dale. The

6

threshold burden falls on the plaintiff, who must demonstrate that a reasonable factfinder could find facts supporting the violation of a constitutional right that had been clearly established at the time of the violation.[4] *Id.* If this burden is met, the defendant must show that (1) there are no genuine issues of material fact and (2) the defendant is entitled to judgment as a matter of law. *Koch*, 660 F.3d at 1238.

## V.     The Wrongful Arrest Claim Against Trooper Jefferson

Invoking § 1983, Mr. Rife argues that Trooper Jefferson lacked probable cause, rendering the arrest a violation of the Fourth and Fourteenth Amendments. According to Mr. Rife, the district court disregarded evidence supporting this claim. Trooper Jefferson counters that

- he had probable cause,

- any possible factual mistake would have been objectively reasonable, and

- the underlying right was not clearly established.

The district court granted summary judgment to Trooper Jefferson, holding that he had probable cause to arrest Mr. Rife for public intoxication. We agree.

---

[4]     The defendants state that the plaintiff must show a violation of a clearly established constitutional right, not that a reasonable factfinder could find facts supporting such a violation. The difference in framing would not affect our analysis.

## A. The Interaction Between Mr. Rife and Trooper Jefferson

Trooper Jefferson's police car had a dashcam, which captured almost the entire interaction between Mr. Rife and Trooper Jefferson.

The dashcam begins with Trooper Jefferson checking on Mr. Rife, who was sitting on a motorcycle next to a road. Mr. Rife was confused with dried blood on his nose, and there were grass and grass stains on the motorcycle. Mr. Rife also had grass stains on his pants and shirt, indicating that he had been thrown from the motorcycle.

Trooper Jefferson asked if Mr. Rife was okay, and Mr. Rife replied that he was fine. But Mr. Rife could not identify the day, approximate the time of day, or remember his social security number. He knew that he had been in Idabel, Oklahoma, earlier that day but could not remember what he had been doing there. His speech was slurred.

The trooper suspected intoxication. Because the symptoms of head injuries and intoxication are similar, the trooper looked for signs of a head injury: unequal tracking of the pupils, unequal pupil size, and resting nystagmus. Mr. Rife did not exhibit these signs.

Trooper Jefferson then performed a horizontal gaze nystagmus test, which could reveal up to 6 clues of impairment. Trooper Jefferson's training stated that if a person exhibits 4 out of the 6 clues, there is an 80 percent chance of intoxication. Mr. Rife exhibited all 6 clues.

8

To determine whether Mr. Rife was intoxicated, Trooper Jefferson conducted four additional tests. Mr. Rife failed these tests or was unable to complete them. Before one of the tests, Mr. Rife stated that he felt "floaty"; during another test, Mr. Rife lost his balance.

These tests and observations led Trooper Jefferson to arrest Mr. Rife for public intoxication. Trooper Jefferson knew that Mr. Rife was not drunk but believed that he had taken too much pain medication. Many of Mr. Rife's symptoms were consistent with intoxication from pain medication, including constricted pupils, lethargy, nystagmus, dizziness, and feeling "floaty."

At the time of arrest, Trooper Jefferson also knew that Mr. Rife had been in a motorcycle accident. Mr. Rife had repeatedly denied being in a motorcycle accident, but Trooper Jefferson said that Mr. Rife had obviously been in an accident.

Though Trooper Jefferson knew that an accident had taken place, he did not believe that it had involved high speed or high impact. Trooper Jefferson reasoned that Mr. Rife did not have the type of visible injuries that would likely result from a high-speed or high-impact accident. For instance, Mr. Rife had no marks or scratches on his arms. Trooper Jefferson also noted that there was little damage to the motorcycle or saddlebags.

9

Trooper Jefferson drove Mr. Rife to jail. During the drive, Mr. Rife said that his chest hurt and groaned in pain. A few minutes later, Mr. Rife stated that his heart hurt and again groaned.

Trooper Jefferson acknowledges that at some point, Mr. Rife complained that he felt sick.

**B.** **The District Court's Alleged Discounting of Supporting Evidence**

Mr. Rife argues that the district court improperly discounted four evidentiary items:

1. Trooper Jefferson reported that the arrest had been for public intoxication under Okla. Stat. tit. 37, § 537, but this statute involves intoxication from alcohol rather than medication.

2. Trooper Jefferson knew that Mr. Rife was not under the influence of alcohol.

3. Trooper Jefferson knew that Mr. Rife had been in a motorcycle accident and that certain medical conditions could mimic the symptoms of intoxication. Although Trooper Jefferson ruled out a head injury, he did not rule out shock or other medical conditions.

4. Mr. Rife said that the only medication he had taken was for blood pressure.

None of this evidence precludes the existence of probable cause.

The first two evidentiary items are immaterial because probable cause need not be based on the statute mistakenly invoked by Trooper Jefferson. *See* Part V(D), below. Under Oklahoma law, Mr. Rife could be

10

guilty of a crime if he had been publicly intoxicated on pain medication rather than alcohol. *See* Parts V(C)-(D), below.

The third evidentiary item is immaterial because probable cause does not require police officers to rule out all innocent explanations for a suspect's behavior. *See, e.g.*, *Lingo v. City of Salem*, 832 F.3d 953, 961 (9th Cir. 2016) ("It is decidedly not the officers' burden to 'rule out the possibility of innocent behavior' in order to establish probable cause." (quoting *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009)); *United States v. Reed*, 220 F.3d 476, 478 (6th Cir. 2000) ("Officers are not required to rule out every possible explanation other than a suspect's illegal conduct before making an arrest."); *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) ("The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause.").

The fourth evidentiary item is also immaterial. Though Mr. Rife stated that the only medication he had taken was for his blood pressure, Trooper Jefferson could rationally have thought that Mr. Rife had forgotten what medication he had taken or had been lying. After all, Mr. Rife had denied being in a motorcycle accident, but obviously had been in an accident and was unable to remember many common things such as what day it was or what he had been doing in Idabel.

11

In these circumstances, we reject Mr. Rife's argument that the district court improperly discounted the four evidentiary items.

## C. The Existence of Probable Cause

Notwithstanding these evidentiary items, probable cause existed to arrest Mr. Rife for public intoxication.

A warrantless arrest is permissible only if an officer has probable cause to believe that the arrestee committed a crime. *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc). "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* at 1116 (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)). The officer's belief does not need to be certain or more likely true than false. *United States v. Padilla*, 819 F.2d 952, 962 (10th Cir. 1987).

In Oklahoma, the crime of public intoxication involves being intoxicated in a public place. Okla. Stat. tit. 37, §§ 8, 537(A)(8). Mr. Rife does not question whether he was in a public place. Instead, he denies any plausible reason to think he was intoxicated.

The "outward manifestations" of intoxication are "impaired mental judgment and physical responses." *Findlay v. City of Tulsa*, 561 P.2d 980, 984 (Okla. Crim. App. 1977). But these symptoms of intoxication "may

12

also be symptomatic of other physical impairments." *Id.* That was the case here, for Mr. Rife's symptoms could reasonably suggest intoxication, a head injury, or other medical conditions.

The Seventh Circuit Court of Appeals addressed a similar situation in *Hirsch v. Burke*, where a diabetic individual experiencing insulin shock was arrested for public intoxication. 40 F.3d 900, 901 (7th Cir. 1994). Before the arrest, the individual had trouble balancing himself, seemed incoherent, smelled of alcohol, had bloodshot eyes, and was unable to state his name or date of birth. *Id.* at 903. Unbeknownst to the officer, the individual was experiencing diabetic symptoms that mimicked intoxication. *Id.* Based on these facts, the Seventh Circuit upheld the district court's finding of probable cause. *Id.* at 903-04.

Similarly, in *Qian v. Kautz*, an individual with a pre-existing head injury was arrested for public intoxication. 168 F.3d 949, 951-52, 954 (7th Cir. 1999). The arresting police officer was unaware of the head injury, but was aware of five facts:

1.  The individual had lost control of a car and crashed.

2.  The individual was hunched over and having difficulty walking.

3.  There were no signs that the individual had hit anything in the car's interior during the accident.

4.  The individual denied being injured and showed no physical signs of injury.

5.  The individual's speech seemed slurred.

13

*Id.* at 954. The Seventh Circuit held that these facts were sufficient to create probable cause, noting that "the overall setting easily support[ed] [the officer's] decision to arrest [the individual]." *Id.*

Some of the factors supporting probable cause in *Hirsch* are present here. Like the arrestee in *Hirsch*, Mr. Rife had trouble balancing himself and was unable to provide the police with basic information (such as the day or time).

There are also parallels between the facts in our case and those in *Qian*. Like the arrestee in *Qian*, Mr. Rife had been in an accident, was hunched over, denied being injured, and had slurred speech.

Additional evidence supports probable cause here that was not present in *Hirsch* or *Qian*. As explained above, Trooper Jefferson examined Mr. Rife to determine whether he had a head injury, checking for unequal tracking of the pupils, unequal pupil size, and resting nystagmus. Mr. Rife did not show any of these signs. After ruling out a head injury, Trooper Jefferson conducted other tests that suggested intoxication.

In these circumstances, an officer could reasonably conclude that Mr. Rife was intoxicated from medication.

**D.    Trooper Jefferson's Reason for Making the Arrest**

Mr. Rife suggests that probable cause did not exist because Trooper Jefferson had relied on the wrong statute. In a report, Trooper Jefferson

14

stated that the arrest had been based on Okla. Stat. tit. 37, § 537. This law deals with intoxication from alcohol, not medication.

But Trooper Jefferson's mistake does not foreclose probable cause because an arresting officer's "subjective reason for making [an] arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Probable cause existed for violation of a separate statute: Okla. Stat. tit. 37, § 8. Under this statute, a crime is committed when the intoxication is caused by either alcohol or another intoxicating substance. *Findlay v. City of Tulsa*, 561 P.2d 980, 984-85 (Okla. Crim. App. 1977). Thus, probable cause existed even though Trooper Jefferson relied on the wrong statute.

## VI. The Wrongful Arrest Claim Against the Oklahoma Department of Public Safety

Mr. Rife invokes the Oklahoma Governmental Tort Claims Act, claiming that the Oklahoma Department of Public Safety is vicariously liable for the wrongful arrest. On this claim, the district court granted summary judgment to the Oklahoma Department of Public Safety, holding that the existence of probable cause vitiated tort liability. We agree with the district court. Because the arrest was supported by probable cause, the Oklahoma Department of Public Safety could not incur liability for a wrongful arrest.

15

**VII. The Deliberate Indifference Claim Against Trooper Jefferson**

Mr. Rife brought a § 1983 claim against Trooper Jefferson, alleging deliberate indifference to serious medical needs. The district court granted summary judgment to Trooper Jefferson, concluding that he enjoyed qualified immunity because there was no evidence of a constitutional violation. This conclusion was erroneous, for Mr. Rife presented evidence that would reasonably allow factual findings supporting liability for deliberate indifference.

**A. The Legal Framework for Deliberate Indifference Claims by Pretrial Detainees**

The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care owed to convicted inmates under the Eighth Amendment. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002). Thus, the Fourteenth Amendment is violated if state officials are deliberately indifferent to a pretrial detainee's serious medical needs. *See, e.g.*, *Martinez v. Beggs*, 563 F.3d 1082, 1088-91 (10th Cir. 2009) (analyzing whether police officers were deliberately indifferent to the serious medical needs of a pretrial detainee).

The Supreme Court has established a two-pronged test for deliberate indifference claims. Under this test, a plaintiff must satisfy an objective prong and a subjective prong. *Farmer v. Brennan*, 511 U.S. 825, 834, 837-40 (1994). The objective prong concerns the severity of a plaintiff's need

16

for medical care; the subjective prong concerns the defendant's state of mind. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). This appeal focuses largely on the subjective prong.

The subjective prong is satisfied only if the defendant knew of an excessive risk to the plaintiff's health or safety and disregarded that risk. *Farmer*, 511 U.S. at 837. In deciding whether this prong is satisfied, the factfinder may consider circumstantial evidence. *Gonzales v. Martinez*, 403 F.3d 1179, 1183 (10th Cir. 2005). For example, the existence of an obvious risk to health or safety may indicate awareness of the risk. *See Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). But "the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him." *Id.* at 843 n.8.

### B. Application of Standards Involving Medical Professionals

Our court applies specialized standards to deliberate indifference claims against medical professionals. *See Self v. Crum*, 439 F.3d 1227, 1231-33 (10th Cir. 2006) (discussing these standards). We have not applied these standards to deliberate indifference claims against laypersons such as police officers. Nonetheless, the district court analyzed whether Trooper Jefferson was deliberately indifferent under the standards for medical professionals. Mr. Rife takes a different approach, urging liability of

17

Trooper Jefferson based on cases involving laypersons. This approach is correct because Trooper Jefferson was not a medical professional.

## C.     The District Court's Discounting of Supporting Evidence

Mr. Rife contends that the district court improperly discounted four evidentiary items:

1.     Mr. Rife said that his chest and heart hurt and made groaning noises.

2.     Mr. Rife stated that he felt sick.

3.     Trooper Jefferson saw dried blood on Mr. Rife's nose.

4.     An expert witness testified that someone on a motorcycle is more likely to be injured in an accident than someone in an automobile.

Trooper Jefferson denies any evidence that Mr. Rife complained of heart or chest pain or groaned in pain. We disagree. The dashcam recorded Mr. Rife's complaints and groans. The district court should have considered this evidence, along with the complaint of feeling sick, the presence of dried blood on Mr. Rife's nose, and the expert testimony that personal injury is more likely in motorcycle accidents than in automobile accidents.[5]

---

[5]     Trooper Jefferson seems to acknowledge that the district court discounted the testimony that personal injury is more likely in motorcycle accidents than in automobile accidents. But he argues that "this abstract proposition is immaterial given the other evidence suggesting that Rife was not injured." Response Br. of the Oklahoma Department of Public Safety and Trooper Jefferson at 18. This argument fails. To the extent that there is

18

### D. Trooper Jefferson's Conscious Disregard of a Substantial Health Risk

Trooper Jefferson argues that Mr. Rife failed to present sufficient evidence of a conscious disregard of a substantial health risk. We disagree.

Mr. Rife argues that his need for medical attention was obvious. This argument is supported by ten evidentiary items:

1. Trooper Jefferson knew that Mr. Rife had been involved in a motorcycle accident.

2. According to an expert witness, injury is more likely in a motorcycle accident than in an automobile accident.

3. Trooper Jefferson saw grass stains on Mr. Rife's pants and on the back of his shirt. These stains indicated that Mr. Rife had been thrown from the motorcycle.

4. Mr. Rife did not know what day it was, what time it was, what his social security number was, or what he had done in Idabel.

5. There was dried blood on Mr. Rife's nose.

6. Mr. Rife had constricted pupils, lethargy, nystagmus, and dizziness.

7. Mr. Rife said that he felt "floaty."

8. Mr. Rife stated that he felt sick.

9. Mr. Rife complained that his chest hurt and he made groaning noises, suggesting that he was in pain.

---

conflicting evidence on the obviousness of the injury, we must view the evidence favorably to Mr. Rife. *See* Part IV, above.

10. Shortly thereafter, Mr. Rife complained that his heart hurt and again groaned.[6]

These facts could lead a reasonable factfinder to infer that Trooper Jefferson had recognized the need for medical attention. Nonetheless, Trooper Jefferson admittedly did not obtain medical attention for Mr. Rife.

Trooper Jefferson denies that a court could find deliberate indifference, pointing to six alleged facts:

1. Trooper Jefferson never saw Mr. Rife exhibit signs of pain or injury.

2. All of Mr. Rife's symptoms were consistent with intoxication from pain medication.

3. Mr. Rife denied being in an accident.

4. When Trooper Jefferson approached Mr. Rife and asked how he was doing, Mr. Rife replied that he was fine.

5. Upon examination, Mr. Rife did not exhibit signs of a head injury.

6. The damage to the motorcycle was relatively minor.

---

[6] Trooper Jefferson argues that "even assuming, *arguendo*, that Rife did, almost inaudibly, say that his chest or heart hurt, this would not be enough, given the totality of the other circumstances of this case, to show that Jefferson acted with deliberate indifference." Response Br. of the Oklahoma Department of Public Safety and Trooper Jefferson at 33. This argument is flawed in two respects. First, Mr. Rife did not whisper these statements; a factfinder could reasonably infer that the statements were loud enough for Trooper Jefferson to hear. Second, other evidentiary items indicated a need for immediate medical attention. For both reasons, this argument fails.

20

The first alleged fact is inaccurate. For instance, the videotape shows Mr. Rife groaning and complaining that his heart and chest hurt. In addition, Trooper Jefferson acknowledges that Mr. Rife complained of feeling sick. And throughout the episode, Mr. Rife had dried blood on his nose.

The second alleged fact is at least debatable, for the summary judgment record does not contain evidence of an inconsistency between Mr. Rife's symptoms (such as pain in the chest or heart) and intoxication from pain medication. And even if the symptoms had been consistent with intoxication, the symptoms could also have suggested serious injury from the apparent motorcycle accident.

The other four alleged facts are insufficient to avoid a genuine dispute of material fact. Mr. Rife denied being in a motorcycle accident, but the trooper repeatedly stated that he knew that Mr. Rife had been in a motorcycle accident. Similarly, Mr. Rife may have initially claimed that he was fine, but he later complained of chest pain and heart pain, said that he felt sick, and remarked that he felt "floaty." These statements, when combined with Mr. Rife's other evidence, could adequately support liability for deliberate indifference even if Mr. Rife had not exhibited signs of a head injury or incurred major damage to his motorcycle.

21

Together, the evidence could reasonably support a finding that Trooper Jefferson knew of a substantial risk to Mr. Rife's health and consciously disregarded that risk.

### E.    Whether the Underlying Right Was Clearly Established

In district court, Trooper Jefferson argued that Mr. Rife's right to medical care had not been clearly established, but the district court did not rule on this argument. In this situation, "[t]he better practice . . . is to leave the matter to the district court in the first instance." *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1290 (10th Cir. 2011) (quoting *Apartment Inv. & Mgmt. Co. v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1198 (10th Cir. 2010)). Thus, we remand to the district court for consideration of whether the underlying constitutional right was clearly established.

## VIII. The Negligence Claim Against the Oklahoma Department of Public Safety

Mr. Rife again invokes the Oklahoma Governmental Tort Claims Act, alleging that the Oklahoma Department of Public Safety is vicariously liable for Trooper Jefferson's negligent failure to obtain medical attention. The district court granted the Oklahoma Department of Public Safety's motion for summary judgment, reasoning that Trooper Jefferson's actions were reasonable as a matter of law.

On appeal, Mr. Rife argues that the district court improperly discounted evidence supporting the negligence claim. We agree and reverse the order granting summary judgment to the Oklahoma Department of Public Safety.

## A.    The District Court's Discounting of Supporting Evidence

Mr. Rife contends that the district court improperly discounted evidence supporting the negligence claim, pointing to the same evidence that the district court improperly discounted for the deliberate indifference claim against Trooper Jefferson. *See* Part VII(C), above. We agree that the district court improperly discounted evidence supporting the negligence claim. This discounting of evidence constituted error because the district court had to view the evidence favorably to Mr. Rife. *See* Part IV, above.

## B.    The Reasonableness of Trooper Jefferson's Failure to Obtain Medical Attention

The Oklahoma Department of Public Safety argues that Trooper Jefferson acted reasonably, relying on five of the alleged facts that Trooper Jefferson uses to defend against the deliberate indifference claim:

1. Mr. Rife had no visible injuries.

2. Mr. Rife did not complain of any injuries.

3. All of Mr. Rife's symptoms were consistent with intoxication from pain medication.

4. Mr. Rife denied being in an accident.

5. Trooper Jefferson ruled out a head injury.

This argument fails. The first two alleged facts are inconsistent with some of the evidence. For example, the first is inaccurate because Mr. Rife had dried blood on his nose. The second is inaccurate because Mr. Rife complained of chest pain and heart pain and said that he felt sick.

The third alleged fact is questionable and immaterial. It is questionable because there is no summary judgment evidence stating that some of Mr. Rife's symptoms (such as pain in one's chest or heart) are consistent with intoxication from pain medication. This alleged fact is also immaterial: Regardless of whether Mr. Rife had been intoxicated, a factfinder could reasonably find that Trooper Jefferson had recognized a substantial risk to Mr. Rife's health and consciously disregarded that risk.

The fourth and fifth alleged facts are also immaterial. Though Mr. Rife denied being in an accident and Trooper Jefferson ruled out a head injury, the trooper repeatedly said that he knew an accident had taken place.

In our view, the five alleged facts do not preclude a finding of negligence.

## IX. The Deliberate Indifference Claim Against Mr. Willis and Mr. Dale

Mr. Rife alleges that Mr. Willis and Mr. Dale are liable under § 1983 for deliberate indifference to serious medical needs. Mr. Willis and Mr.

24

Dale counter that they did not violate a constitutional right and that the underlying right was not clearly established.

The district court granted summary judgment to Mr. Willis and Mr. Dale based on qualified immunity, reasoning that there was no evidence of a constitutional violation. We disagree, concluding that the district court erred by (1) treating Mr. Willis and Mr. Dale like medical professionals and (2) misunderstanding a key piece of evidence—the declaration by Mr. Rife's cellmate.

## A.    The Use of Standards Applicable to Medical Professionals

The district court analyzed whether Mr. Willis and Mr. Dale were deliberately indifferent under the standards for medical professionals. These standards do not apply because Mr. Willis and Mr. Dale were not medical professionals. *See* Part VII(B), above.

## B.    Mr. Rife's Interaction with Mr. Willis and Mr. Dale

When Mr. Rife and Trooper Jefferson arrived at the jail, Trooper Jefferson told Mr. Willis and Mr. Dale that Mr. Rife had been arrested for public intoxication. But no one mentioned the motorcycle accident or said that Mr. Rife might have been injured.

Mr. Willis and Mr. Dale booked Mr. Rife into the jail. During the book-in, Mr. Rife was dazed, slurring his words and showing confusion about where he was or what he was doing.

25

As part of the book-in, Mr. Dale completed a medical questionnaire for Mr. Rife. According to this questionnaire, Mr. Rife did not show signs of trauma or illness that required immediate medical attention. Mr. Willis and Mr. Dale suspected that Mr. Rife was drunk, though Mr. Willis was not sure what substance Mr. Rife was on. Mr. Willis and Mr. Dale could not smell alcohol on Mr. Rife's breath.

Suspecting intoxication, Mr. Willis decided to place Mr. Rife on medical observation, fearing that he might throw up in his sleep. This placement required jail personnel to check on Mr. Rife every fifteen minutes.

Mr. Willis and Mr. Dale moved Mr. Rife to the holding cell. Mr. Rife's entry into the cell was observed by his new cellmate, Mr. Timothy May, who submitted a declaration recounting what he saw and heard: Mr. Rife moaned loudly, showed obvious pain, and repeatedly complained of stomach pain.

### C. Mr. Rife's Release and Collapse

The following morning, Mr. Rife was released. Upon release, Mr. Rife walked about 100 feet to a bail bondsman's office. During the walk, Mr. Rife stated that he did not feel well.

When Mr. Rife reached the office, he sat in a chair. When he later tried to stand up, he passed out.

26

**D.    The District Court's Consideration of the Cellmate's Declaration**

Mr. Rife contends that the district court improperly discounted the declaration of Mr. May. In Mr. Rife's view, the declaration supports the existence of serious pain and the obvious need for medical attention upon entry into the holding cell.

The district court stated that Mr. May's declaration is unclear about whether Mr. Rife had been in obvious pain when entering the holding cell. We disagree with this characterization, for Mr. May's declaration states: "I woke up when Mr. Rife entered the holding cell because he was making loud moaning and groaning noises. He was obviously in pain. He kept saying that his stomach hurt and continued to make loud moaning and groaning noises." Appellant's App'x at 1650. This account unambiguously indicates that Mr. Rife was obviously in pain when he entered the holding cell. In our view, the district court misunderstood Mr. May's declaration.[7]

**E.    Conscious Disregard of a Substantial Risk to Mr. Rife's Health**

Mr. Willis and Mr. Dale argue that they did not consciously disregard a substantial risk to Mr. Rife's health or safety. But a reasonable factfinder could reach a different conclusion.

---

[7]    If the declaration had been ambiguous, the district court should have resolved the ambiguity in Mr. Rife's favor. *See* Part IV, above.

27

According to Mr. May, Mr. Rife was repeatedly moaning in pain and complaining of stomach pain when entering the holding cell. This evidence could lead a reasonable factfinder to infer (1) an obvious need for medical attention and (2) Mr. Willis and Mr. Dale's awareness of a substantial risk to Mr. Rife's health.[8]

Mr. Willis and Mr. Dale did not obtain medical attention for Mr. Rife. Thus, the factfinder could reasonably infer that Mr. Willis and Mr. Dale had disregarded the obvious risk to Mr. Rife.

According to Mr. Willis and Mr. Dale, Mr. Rife never complained of pain. But Mr. May states under oath that Mr. Rife entered the holding cell while making loud moaning and groaning noises, "obviously" suffering from pain, and repeatedly complaining of stomach pain. *Id*. Mr. Willis and Mr. Dale were present at the time.

Viewing Mr. May's sworn account favorably to Mr. Rife, as we must,[9] we consider the inferences that could reasonably be drawn. Mr. May stated that Mr. Rife was moaning loudly and kept complaining of stomach pain. Because Mr. Willis and Mr. Dale were present, the factfinder would

---

[8]  Mr. Willis and Mr. Dale argue that at most, Mr. May's declaration indicates awareness of a stomach ache. But a factfinder could reasonably infer that Mr. Willis and Mr. Dale knew that Mr. Rife was in considerable pain, for Mr. May stated that Mr. Rife had moaned and had repeatedly complained of stomach pain.

[9]  *See* Part IV, above.

reasonably infer that they heard the moaning and pain complaints. And if the need for medical attention appeared obvious to Mr. May, the factfinder could reasonably infer that the need for medical attention would also have been obvious to Mr. Willis and Mr. Dale. *See Farmer v. Brennan*, 511 U.S. 842 (1994) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") After all, Mr. Willis and Mr. Dale had already decided to require "medical observation" of Mr. Rife even before he entered the holding cell. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004) (stating that the jailers' placement of an inmate in an observation cell supported an inference of deliberate indifference to the inmate's complaints of severe stomach pain).

Mr. Willis and Mr. Dale argue that at book-in, they did not see any injuries to Mr. Rife. But a factfinder could reasonably downplay the lack of visible injuries in light of Mr. Rife's disorientation and moaning of pain when entering the holding cell.

Mr. Willis and Mr. Dale also note that (1) Mr. Rife did not ask for medical attention and (2) neither Mr. Rife nor Trooper Jefferson mentioned a motorcycle accident. Nevertheless, other evidence would allow a reasonable factfinder to infer that Mr. Willis and Mr. Dale had been aware of a substantial risk to Mr. Rife's health.

29

Mr. Rife did not seek medical attention immediately after his release. Pointing to this fact, Mr. Willis and Mr. Dale contend that it would be unreasonable to expect them to recognize the need for medical attention when Mr. Rife did not recognize that need. For two reasons, we conclude that a factfinder could justifiably infer that Mr. Willis and Mr. Dale had recognized the need for medical attention even if Mr. Rife had not. First, Mr. Willis and Mr. Dale state that Mr. Rife was confused and apparently intoxicated when arriving at the jail. Second, even after Mr. Rife was released, he remained disoriented from a traumatic brain injury. Thus, a factfinder could reasonably infer that Mr. Willis and Mr. Dale had recognized the need for medical attention regardless of what Mr. Rife had thought.[10]

### F. Whether the Underlying Right Was Clearly Established

In district court, Mr. Rife argued that the underlying right was clearly established for purposes of qualified immunity. The district court did not reach this issue.

As noted above, "[t]he better practice on issues raised [below] but not ruled on by the district court is to leave the matter to the district court in the first instance." *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins.*

---

[10] Mr. Rife contends that he was mistreated throughout the night. We need not address whether this contention could affect the claims against Mr. Willis or Mr. Dale.

30

*Co.*, 661 F.3d 1272, 1290 (10th Cir. 2011) (quoting *Apartment Inv. &*

*Mgmt. Co. v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1198 (10th Cir. 2010)); *see*

*also* Part VII(E), above. As a result, we remand to the district court to

determine in the first instance whether the underlying right was clearly

established.

## X.  The Deliberate Indifference Claim Against the Jail Trust

Mr. Rife brings a § 1983 municipal liability claim against the jail

trust. According to Mr. Rife, the jail trust's policies and customs led the

jail officials to act with deliberate indifference. The jail trust moved for

summary judgment, making two arguments:

1.  There was no underlying violation of Mr. Rife's constitutional rights that could support a § 1983 claim against the jail trust.

2.  Even if a jail employee had committed a constitutional violation, it had not resulted from the jail trust's policy or custom.[11]

The district court granted the jail trust's motion for summary judgment,

reasoning that there had not been an underlying constitutional violation.

---

[11]    Municipal liability under § 1983 cannot be based on respondeat superior or vicarious liability. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, a plaintiff must establish that (1) a policy or custom of the municipality exists and (2) the policy or custom caused the constitutional violation. *See Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 758 (10th Cir. 2014) ("As to institutional liability under § 1983, the County can only be liable for the actions of Sergeant Benson if it had a custom, practice, or policy that encouraged or condoned the unconstitutional behavior[] . . . .").

31

We have already held that a reasonable factfinder could infer facts supporting a constitutional violation by Mr. Willis and Mr. Dale, who were employees of the jail trust acting in the course of employment. Thus, Mr. Rife has defeated the sole basis for the district court's award of summary judgment to the jail trust.

Nonetheless, the jail trust urges affirmance based on an alternate ground: the absence of substantial harm from the delay in medical attention. *See Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000). To support this argument, the jail trust points to medical testimony that the delay did not affect Mr. Rife's medical care. But Mr. Rife rebutted that testimony with evidence of substantial pain while he waited for medical attention. *Id.* Thus, we cannot affirm based on the jail trust's argument.

But the jail trust raises two other alternate grounds for affirmance: (1) the absence of causation and (2) the absence of a clearly established constitutional right. The district court did not rule on these arguments, and we remand for the district court to address these issues in the first instance.[12] *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661

---

[12] The district court concluded that Mr. Rife's interactions with two unidentified jail officials could not create liability on the part of the jail trust. The district court seemed to hold that the jail trust could incur liability only if the jail officials could be identified. We need not determine whether this holding was correct because constitutional violations by Mr. Willis and Mr. Dale could support liability of the jail

F.3d 1272, 1290 (10th Cir. 2011); *see* Part VII(E), above; *see also Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 758 (10th Cir. 2014) (stating that the county could incur liability under § 1983 for a sergeant's actions only if the county "had a custom, practice, or policy that encouraged or condoned the unconstitutional behavior").

## XI. The District Court's Denial of Sanctions

Mr. Rife argues that there was a videotape of him in the booking area of the jail and that the jail trust intentionally destroyed the videotape.[13] According to Mr. Rife, destruction of the videotape constitutes unlawful spoliation of evidence, justifying sanctions in the form of an adverse inference against the jail trust, Mr. Willis, and Mr. Dale.

In district court, Mr. Rife did not ask for an adverse inference. Thus, Mr. Rife has forfeited this argument. *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1238 (10th Cir. 2016). On appeal, we may consider forfeited arguments under the plain-error standard. *Id.* at 1239. But Mr. Rife has not asked us to apply this standard. Thus, we cannot reverse based on this argument. *See Richison v. Ernest Grp., Inc.*, 634 F.3d

trust. Thus, we need not decide whether the jail trust could incur liability based on the misconduct of unidentified jail officials.

[13] The jail trust, Mr. Willis, and Mr. Dale contend that the videotape did not show the booking process. Instead, they state that the videotape "showed Rife walk[ing] into the booking area and call[ing] the [bail] bondsman the next morning." Response Br. of the Jail Trust, Mr. Willis, and Mr. Dale at 37.

33

1123, 1130-31 (10th Cir. 2011) (stating that a failure to argue plain error on appeal "marks the end of the road for an argument for reversal" newly presented on appeal).

Even if Mr. Rife had not forfeited this argument, we could not grant the sanction he is seeking. For an adverse inference sanction, the aggrieved party must show bad faith. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) ("[I]f the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith."); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) ("[An] adverse inference must be predicated on the bad faith of the party destroying the records."). But both here and in district court, Mr. Rife failed to identify any evidence of bad faith.

For these reasons, we uphold the district court's denial of sanctions.

## XII.  Disposition

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

34