PUBLISH

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**January 19, 2021**

**FOR THE TENTH CIRCUIT**
_____

**Christopher M. Wolpert**
**Clerk of Court**

DUSTIN LANCE,

    Plaintiff - Appellant,

v.

CHRIS MORRIS, Sheriff of Pittsburg
County, Oklahoma, in his official
capacity; MIKE SMEAD, in his
individual capacity; DAKOTA
MORGAN, in his individual capacity;
EDWARD MORGAN, in his individual
capacity; DANIEL HARPER, in his
individual capacity,

    Defendants - Appellees,

and

MCALESTER REGIONAL HEALTH
CENTER AUTHORITY, d/b/a
McAlester Regional Hospital; BOARD
OF COUNTY COMMISSIONERS OF
PITTSBURG COUNTY, OKLAHOMA;
STEPHEN SPARKS, in his individual
capacity; JOEL KERNS, former Sheriff
of Pittsburg County, in his individual
capacity,

    Defendants.

No. 19-7050

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:17-CV-00378-RAW)**
_____

Megha Ram, Roderick & Solange MacArthur Justice Center, Washington, D.C. (J. Spencer Bryan and Steven J. Terrill, Bryan & Terrill Law, Tulsa, Oklahoma, and David M. Shapiro, Roderick & Solange MacArthur Justice Center, Chicago, Illinois, with her on the briefs), on behalf of the Plaintiff-Appellant.

Michael L. Carr, Collins Zorn & Wagner, P.C., Oklahoma City, Oklahoma (Taylor M. Riley, Collins, Zorn & Wagner, P.C., Oklahoma City, Oklahoma, with him on the briefs), on behalf of the Defendants-Appellees Chris Morris, Daniel Harper, and Dakota Morgan.

Carson C. Smith, Pierce Couch Hendrickson Baysinger & Green, L.L.P., Oklahoma City, Oklahoma (Robert S. Lafferrandre, Pierce Couch Hendrickson Baysinger & Green, L.L.P. Oklahoma City, Oklahoma, with him on the brief) on behalf of the Defendants-Appellees Edward Morgan and Mike Smead.

David A. Russell and Emily Jones Ludiker of Rodolf & Todd, Tulsa, Oklahoma, filed a brief on behalf of McAlester Regional Health Center.

_____

Before **MATHESON**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This case involves a denial of medical treatment for Mr. Dustin Lance at a detention center in McAlester, Oklahoma. Mr. Lance needed treatment for priapism (a persistent, painful erection), but he had to wait three days for the treatment. He ultimately sued the current sheriff in his official capacity[1] and four jail guards in their personal capacities, invoking

---

[1] Mr. Lance also sued the former sheriff (Mr. Joel Kerns) and the McAlester Regional Health Center Authority, but the appeal does not address the claims against these parties.

2

42 U.S.C. § 1983 and the Fourteenth Amendment's Due Process Clause. The district court granted summary judgment to the defendants.

We affirm in part and reverse in part. Like the district court, we conclude that one of the jail guards, Edward Morgan, has qualified immunity because he didn't violate Mr. Lance's constitutional right to medical care. But we conclude that qualified immunity was unavailable to the three other jail guards: Mike Smead, Dakota Morgan, and Daniel Harper. Finally, we conclude that the sheriff, Chris Morris, was not entitled to summary judgment in his official capacity because the factfinder could reasonably determine that the county's policies had violated Mr. Lance's constitutional right to medical care.

## 1. Mr. Lance's Priapism and Permanent Injuries

The parties attribute the priapism to a pill that Mr. Lance obtained from another inmate. He took the pill on a Thursday evening and awoke the next morning with an erection that would not go away.

After awaking, Mr. Lance used his cell's intercom to call Edward Morgan, admitting consumption of another person's pill and stating that the pill had caused an erection that would not go away.

According to the plaintiff, Edward Morgan responded by stating that he would put Mr. Lance in lockdown for taking the pill in violation of jail policy. But no one came to put Mr. Lance in lockdown, so he called again; this time, he requested medical attention.

3

Over the next three days, Mr. Lance made more requests for medical care, reporting a persistent erection, an intense pain, and a need for medical treatment.

**2.     Mr. Lance's Trip to the Hospital After Three Days of Intense Pain**

The three-day period ended on a Monday when the detention center's nurse came on duty. She examined Mr. Lance's engorged penis and saw that it was purple and might be permanently damaged. Alarmed, she asked jail guards to take Mr. Lance to a local hospital. At the hospital, an emergency physician examined Mr. Lance and provided medication. But the medication did not help, and the physician said that Mr. Lance needed to go to another hospital about 90 miles away.

Rather than go to the second hospital, the guards returned Mr. Lance to the McAlester jail. When they returned, jail officials obtained a judicial order releasing Mr. Lance on his own recognizance. His father came to the jail that afternoon and later drove Mr. Lance to the second hospital, arriving at about 7:15 p.m.

After they arrived, a urologist operated. But Mr. Lance suffered permanent injuries, which will probably include impotence for the rest of his life.

### 3. Mr. Lance's Claims Against the Sheriff and Jail Guards

For the claims against the jail guards, Mr. Lance alleged denial of medical care under the Fourteenth Amendment's Due Process Clause based on a failure to timely respond to requests for medical treatment. For the claims against the sheriff, Mr. Lance alleged the adoption of policies violating his constitutional right to medical treatment for serious medical needs.

The jail guards and sheriff moved for summary judgment. The sheriff denied a constitutional violation, and the four jail guards urged qualified immunity. The district court granted the motions for summary judgment.

### 4. The Standard of Review

For these rulings, we engage in de novo review. *Talley v. Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019). Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). We consider the evidence in the light most favorable to Mr. Lance and draw all reasonable inferences in his favor. *Id.*

### 5. The Four Jail Guards' Defense of Qualified Immunity

Drawing reasonable inferences in favor of Mr. Lance, we consider whether he created a genuine issue of material fact on qualified immunity for the jail guards.

5

## A. The Elements of Qualified Immunity

Because the jail guards asserted qualified immunity, the burden fell on Mr. Lance. *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212–13 (10th Cir. 2019). To meet that burden, Mr. Lance needed to show the violation of a constitutional or statutory right and the clearly established nature of that right. *Donahue v. Wihongi*, 948 F.3d 1177, 1186 (10th Cir. 2020).

## B. Violation of the Constitutional Right to Medical Care

The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care that the Eighth Amendment requires for convicted inmates. *Strain v. Regalado,* 977 F.3d 984, 989 (10th Cir. 2020). Under that standard, jail guards cannot act with deliberate indifference to a pretrial detainee's serious medical needs. *Id.* To establish a violation of this right, a pretrial detainee must satisfy objective and subjective prongs of the test. *Id.*[2]

### (1) The Objective and Subjective Prongs

The objective prong is satisfied if the medical need is sufficiently serious. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). A medical need is sufficiently serious if

- a physician directed further treatment after diagnosing the condition or

---

[2] Mr. Lance argues that *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) abolished the subjective component for claims of denial of due process by denial of medical care for pretrial detainees. We recently rejected that argument in *Strain v. Regalado*, 977 F.3d 984, 993 (10th Cir. 2020).

- the need for a doctor's attention would be obvious to a lay person.

*Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). Medical delays can be sufficiently serious if they cause substantial harm, such as "permanent loss[] or considerable pain." *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

In district court, the jail guards conceded satisfaction of the objective prong because the priapism had constituted a sufficiently serious medical need.[3] But the parties disagree on the subjective prong, which turns on the defendant's state of mind. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). To satisfy this prong, the plaintiff must show that the defendant

- was aware of a substantial risk of serious harm and

- chose to disregard that risk.

---

[3] Several jail guards testified that priapism is a serious medical condition that requires treatment. For example, Mr.Smead acknowledged "that if somebody had an erection that wouldn't go away[,] delaying medical care could expose that inmate to medical or bodily harm." Appellant's App'x vol. II, at 593. Similarly, Mr. Dakota Morgan admitted that a prolonged erection warrants medical attention. Appellant's App'x vol. III, at 631–32. And Mr. Harper admitted that "medical would need to be called" if a detainee experienced a prolonged, painful erection. Deposition of Daniel Harper, *Lance v. Pittsburg Cty. Bd. of Cty. Comm'rs*, No. 6:17-cv-00378-RAW (E.D. Okla. 2019), ECF No. 172, Ex. 17, at 48–49.

*See Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (aware of a "substantial risk of serious harm" (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996))); *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (disregards the risk). A plaintiff may prove awareness of a substantial risk through circumstantial evidence that the risk was obvious. *Farmer v. Brennan*, 511 U.S. 825, 842–43 (1994).

On this prong, the district court reached different conclusions for the four jail guards. For Edward Morgan, the court concluded that Mr. Lance had not satisfied the subjective prong. For three other guards (Mike Smead, Dakota Morgan, and Daniel Harper), the court concluded that the factfinder could reasonably infer awareness of a substantial risk of serious harm and knowing disregard of that risk.

In this appeal, Mr. Lance argues that the district court

- erroneously assessed the evidence on Edward Morgan and

- properly analyzed the evidence involving the other guards.

In contrast, the other guards maintain that a factfinder could not reasonably infer awareness of a substantial risk and knowing disregard of that risk.

**(2)  Edward Morgan**

After taking the pill, Mr. Lance awoke with an erection that would not subside. Concerned, he called the control tower. According to Mr. Lance, Edward Morgan answered. Mr. Lance said that he had taken a pill

8

and developed an erection that would not go away. But he did not complain of pain or say that he needed to see a doctor or nurse.

Later that day, Mr. Lance made more calls to the control tower, reporting considerable pain and asking for medical treatment. But Mr. Lance testified that the other calls had involved other guards, and there is no evidence that Edward Morgan had heard those calls. Because Edward Morgan had been contacted only once and given only limited information, the district court concluded that he had not acted with deliberate indifference.

On appeal, Mr. Lance argues that the factfinder could reasonably infer deliberate indifference from

- jail administrators' recommendation for sergeants, such as Edward Morgan, to move around in the booking area and pods,

- Edward Morgan's presence in the control tower (where he conducted sight checks) on Friday and Saturday nights, and

- repeated calls to the tower from Mr. Lance and other detainees.

We reject these arguments, for a claim of deliberate indifference cannot be based on speculation about what Edward Morgan might have seen or heard. *See Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1031 & n.3 (10th Cir. 2020); *see also Self v. Crum*, 439 F.3d 1227, 1235 (10th Cir. 2006) (rejecting an argument based on speculation that a defendant had a culpable state of mind). Mr. Lance's arguments entail only speculation about Edward Morgan's awareness of the condition.

9

According to Mr. Lance, he had only one conversation with Edward Morgan. In that conversation, Mr. Lance did not provide enough information to suggest a serious medical need; and he cannot avoid summary judgment with speculation that he or other detainees might have had other conversations with Edward Morgan.

Apart from speculation, Mr. Lance lacked evidence about what Edward Morgan might have seen. For example, Mr. Lance points out that guards sometimes entered the pods. But the summary-judgment record doesn't contain any evidence suggesting that Edward Morgan had entered the pods when working the late shift on Friday or Saturday night.

We addressed a similar gap in the complaint in *Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022 (10th Cir. 2020). There a guard saw an inmate who was allegedly suffering from a severe illness. *Id.* at 1030 (discussing the dismissal of a claim against Officer Valdo). But we upheld the dismissal because the complaint hadn't identified symptoms that the guard would have seen. *Id.*

Here too we have only speculation that Edward Morgan might have entered the pods and seen Mr. Lance suffering from priapism. But the summary-judgment record contains no evidence on

- whether Edward Morgan entered the pods,
- whether he would have seen Mr. Lance, or

10

- whether Edward Morgan's observation would have reflected the intensity or duration of Mr. Lance's pain.

Mr. Lance also relies on Edward Morgan's presence in the tower on Friday and Saturday nights. For example, Mr. Lance presents statements that

- he strolled the dayroom with a visible erection and

- his pain was obvious.

From the tower, Edward Morgan might have seen into the dayroom if there had been adequate lighting. But Mr. Lance presented no evidence about

- the lighting in the dayroom during Edward Morgan's shifts on Friday and Saturday nights or

- Mr. Lance's possible presence in the dayroom on Friday and Saturday nights.

We thus conclude that Edward Morgan's job responsibilities— moving around the facility and conducting sight checks from the control tower during the night shifts—do not show knowledge about Mr. Lance's priapism and need for treatment.

Mr. Lance also argues that Edward Morgan

- was in the tower from 11:00 on Friday night until 6:00 on Saturday morning and

- must have received a call from Mr. Lance during that time because Mr. Lance later testified that he had called the tower every shift to report pain and request medical attention.

For this argument, Mr. Lance relies on testimony about unclear log entries and speculation that Edward Morgan entered the tower about 2:30 a.m. But Mr. Lance admits that he talked only once with Edward Morgan and didn't complain of pain or ask for medical help.

Because Mr. Lance failed to satisfy the subjective prong, the district court properly granted summary judgment to Edward Morgan.

### (3)    Mike Smead

On the two days after Mr. Lance took the pill, Mr. Mike Smead worked from 6:00 a.m. to 6:00 p.m. Mr. Lance testified that

- he had told Mr. Smead about taking the pill, the existence of a prolonged erection, and the need to see the nurse,

- he had shown his penis to Mr. Smead a couple of times and complained about the condition whenever he saw Mr. Smead,

- Mr. Smead had seen Mr. Lance with his pants off and Mr. Lance explained that he was tucking his pants underneath his groin to diminish the pain when sitting down, and

- Mr. Smead had snickered when he saw Mr. Lance's erection.

In addition to this testimony, Mr. Lance points to the nurse's account of her discussion with Mr. Smead on Monday. The nurse had asked Mr. Smead why he had not reported the condition, and he responded: "I thought he [Mr. Lance] was just playing." Appellant's App'x vol. II, at 565.

Mr. Smead argues that this evidence doesn't show deliberate indifference because

12

- he didn't know when a prolonged erection would become a medical emergency,

- Mr. Lance hadn't described the duration or cause of the priapism, and

- there was no indication that the symptoms were alarming when Mr. Smead had seen Mr. Lance.

But Mr. Lance satisfies the subjective prong through reports of pain, his repeated requests for medical treatment, and other detainees' insistence that the need for medical attention was obvious. *See McCowan v. Morales*, 945 F.3d 1276, 1292 (10th Cir. 2019) (concluding that the subjective prong was satisfied when a detainee repeatedly complained that he was in excruciating shoulder pain and the officer disregarded the complaints for about two hours); *see also Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) (concluding that a prisoner can satisfy the subjective prong through evidence of pain caused by a delay in obtaining medical treatment).

Mr. Smead points out that he might not have recognized the severity of Mr. Lance's condition. But other detainees stated that Mr. Lance was obviously continuing to suffer pain throughout the weekend. From the other detainees' accounts, "a factfinder [could] conclude that a [jail] official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

We addressed a similar issue in *Rife v. Oklahoma Department of Public Safety*, 854 F.3d 637 (10th Cir. 2017). There a detainee alleged

deliberate indifference to serious medical needs consisting of stomach pain. *Id.* at 641–42, 652. The guards argued that they hadn't known of the pain because the detainee did not complain. *Id.* at 652. But another detainee stated under oath that the plaintiff had groaned loudly, had repeatedly complained, and had displayed obvious pain. *Id.* Given this sworn account, we reversed the award of summary judgment to the jail guards even though they had denied knowledge of the plaintiff's pain. *Id.*

The same is true here because

- three detainees stated under oath that Mr. Lance had obviously experienced pain throughout the weekend and

- Mr. Lance testified that he had reported his pain to Mr. Smead.

Given these sworn statements, Mr. Smead's denial of awareness does not justify summary judgment.

\* \* \*

Like the district court, we conclude that a reasonable factfinder could infer that Mr. Smead had been aware of a substantial risk of serious harm and had knowingly disregarded that risk.

**(4) Dakota Morgan**

Among the jail guards was Mr. Dakota Morgan, who manned the control tower on Friday afternoon. Mr. Lance stated that he had called the control tower that afternoon and reported "[his] persistent erection, [his] need for medical attention[,] and the considerable pain [he] was

14

experiencing." Appellant's App'x vol. III, at 660. While in the control tower, Dakota Morgan would have conducted sight checks of the pod where Mr. Lance was housed.

Given this evidence, the district court concluded that a reasonable factfinder could infer that Dakota Morgan had been aware of a substantial risk and had knowingly disregarded that risk. We agree.

In arguing to the contrary, the defendants

- point out that Mr. Lance couldn't remember talking to Dakota Morgan,

- discount the statements from other detainees that Mr. Lance appeared to be in pain, and

- contrast Mr. Lance's behavior when suffering from priapism with readily observable symptoms like "collapsing, vomiting, paleness, sweating or a repeatedly stated belief [that] his condition was life threatening."

Appellees' (Chris Morris, Daniel Harper, & Dakota Morgan) Resp. Br. at 36–37. But Mr. Lance satisfies the subjective prong through his report of pain and his request to see a nurse or a doctor. *See McCowan v. Morales*, 945 F.3d 1276, 1292 (10th Cir. 2019)*; Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005).

Even though Mr. Lance couldn't remember talking to Dakota Morgan, a factfinder could reasonably infer that they had talked when Mr. Morgan was in the control tower. After all, Mr. Lance testified that he had called the control tower on Friday afternoon, complaining of pain and

15

requesting medical treatment. And only one person manned the control tower at any one time. On Friday afternoon, that person was Dakota Morgan. So a reasonable factfinder could infer that Mr. Lance had complained to Dakota Morgan about the pain.

The evidence suggests that Dakota Morgan not only responded to Mr. Lance's call but also saw into the pods through a large glass window separating the tower from the common area.



*See Durkee v. Minor*, 841 F.3d 872, 876 (10th Cir. 2016) (rejecting a jail guard's summary-judgment argument that he hadn't seen an inmate in the visiting room partly because he could be seen through a large rectangular window). Mr. Lance explained that any guard in the tower could see the

dayroom, which was only about ten yards away. And the former sheriff testified that guards in the tower could view a surveillance video from a camera in the pod.

Given the evidence of the call on Friday afternoon and Dakota Morgan's view of the dayroom, a reasonable factfinder could infer that he had been aware of a substantial risk of serious harm and had knowingly disregarded that risk.

### (5) Daniel Harper

Another jail guard was Daniel Harper. The district court concluded that the factfinder could reasonably infer that Mr. Harper had known about Mr. Lance's persistent erection, and we agree based on two facts:

1. Mr. Harper had distributed breakfast trays on Monday morning, three days into Mr. Lance's priapism.

2. Mr. Lance had asked for medical treatment whenever the meal trays were delivered.

From these facts, a factfinder could reasonably infer that Mr. Lance complained to Mr. Harper when he delivered the breakfast tray on Monday morning. Mr. Lance has thus satisfied the subjective prong for the claim against Mr. Harper.

### C. Violation of a Clearly Established Right

Although Mr. Lance satisfied the objective and subjective prongs for the claims against Mike Smead, Dakota Morgan, and Daniel Harper, they

17

alternatively urge qualified immunity based on the lack of a clearly established right.

A constitutional right is clearly established if all reasonable jail guards would have understood that their conduct had violated the Constitution. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam). This understanding may arise from a precedent or weighty authority from other courts. *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018).

Mr. Lance argues that our precedents have clearly established a jail guard's constitutional obligation to obtain medical care when (1) a detainee experiences severe pain and (2) the jail guard controls access to medical care. For this argument, Mr. Lance relies on *McCowan v. Morales*, 945 F.3d 1276 (10th Cir. 2019). There a detainee repeatedly complained that he had reinjured his shoulder and was in "excruciating" pain. *Id.* at 1293. An officer ignored the detainee's complaints and waited two hours before providing access to medical care. *Id.* at 1292. We denied qualified immunity, likening the facts to *Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th Cir. 2002). *McCowan*, 945 F.3d at 1293.

In *Olsen*, we had concluded that qualified immunity was unavailable for an official who ignored reports of a detainee's mental health problems and a panic attack. 312 F.3d at 1309, 1317. *Olsen*'s reasoning led the *McCowan* panel to conclude that "[t]his constitutional violation [had been]

18

clearly established by August 2015," which is when the *McCowan* plaintiff had complained of shoulder pain. *McCowan*, 945 F.3d at 1292.

Mr. Lance also relies on another opinion involving a guard's delay in providing medical care to a prisoner: *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000). There a prisoner was sweating, appeared pale, and reported "crushing" chest pain, difficulty breathing, and vomiting. *Id.* at 1208. But a guard waited more than a day before sending the prisoner to the hospital, where doctors discovered that he had suffered a major heart attack. *Id.* We held that the prisoner had shown a guard's deliberate indifference in delaying medical treatment. *Id.* at 1210–11.

Finally, Mr. Lance relies on two other opinions stating that medical delays may violate the constitution: *Al-Turki v. Robinson*, 762 F.3d 1188, 1195 (10th Cir. 2014) and *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005).

In response, the defendants make four arguments:

1.  *McCowan v. Morales*, 945 F.3d 1276 (10th Cir. 2019), cannot clearly establish the right because the opinion came after the events here (December 2016).

2.  Some of the cited opinions involve medical professionals and did not supply notice of standards applicable to lay officers.

3.  Some of the cited opinions involved conditions more serious than Mr. Lance's priapism.

4.  "[Mr. Lance's] articulation of qualified immunity yoked only to 'pain,' severe or not, however defined, would present a host of practical problems in the jail context."

19

Appellees' (Edward Morgan & Mike Smead) Resp. Br. at 30. We reject these arguments.

First, even though *McCowan v. Morales*, 945 F.3d 1276 (10th Cir. 2019) came after the delay in treating Mr. Lance's priapism, we held there that the right had been clearly established in August 2015, before the events involving Mr. Lance. *Id.* at 1294; *see* pp. 18–19, above.

Second, it's not fatal that some of the cited opinions involved medical professionals. We did address the liability of medical professionals in *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) and *Mata v. Saiz*, 427 F.3d 745, 755–61 (10th Cir. 2005). But those opinions do not vitiate the duty of lay officials. In *McCowan* and *Olsen*, we held that lay officials (just like medical professionals) can incur liability for delays in providing medical treatment. *See* pp. 18–19, above.

Third, the scope of the constitutional duty isn't diminished just because some of our prior opinions involved potentially life-threatening conditions. *See, e.g.*, *Sealock v. Colorado*, 218 F.3d 1205, 1208 (10th Cir. 2000) (potential heart attack). We've not required a life-threatening condition to trigger a constitutional duty to provide adequate medical care. For example, we've held that guards acted with deliberate indifference by waiting two hours to treat shoulder pain even though the pain wasn't life-

threatening. *McCowan v. Morales*, 945 F.3d 1276, 1293–94 (10th Cir. 2019); *see* pp. 18–19, above.

Fourth, we reject the jail guards' argument about the impracticality of a standard based on pain. Mr. Lance's arguments are grounded in the controlling law, which establishes that a delay in providing medical care may be sufficiently serious if the delay leads to substantial pain. *See* pp. 7, 13–14, above.

For these four reasons, we conclude that Mr. Lance's evidence shows that Mike Smead, Dakota Morgan, and Daniel Harper violated a clearly established constitutional right. The district court thus erred in granting their motions for summary judgment.

## 6. The County Policies

Mr. Lance sued the sheriff based on two of the county's policies:

1. failing to train non-medical personnel on how to respond to medical emergencies when the nurse was off site

2. releasing detainees who needed further medical attention rather than driving them to a second hospital

On both claims, the district court granted summary judgment to the sheriff, reasoning that

- the county's policy on training had been adequate and

- the sheriff had not acted with deliberate indifference by releasing detainees needing further hospitalization because Mr. Lance was not harmed by the delay.

We disagree with these conclusions.

21

## A.     Failure to Train

To recover for a failure to train, Mr. Lance needs to prove three elements:

1.     the existence of a county policy or custom involving deficient training

2.     the policy or custom's causation of an injury

3.     the county's adoption of a policy or custom with deliberate indifference

*Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283–84 (10th Cir. 2019). On appeal, Mr. Lance contends that a factfinder could reasonably infer satisfaction of the first and third elements.[4]

On the first element, the sheriff argues that Mr. Lance failed to identify a policy that was obvious and "closely related" to his injury. *See Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999) (setting out the test for the first element), *abrogated in part on other grounds*, *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020). We disagree.

The county adopted a policy stating that "[s]upervisors will determine the immediacy of medical complaints and take the appropriate action." Appellant's App'x vol. II, at 404. But Mr. Lance presented

---

[4]     On the second element (causation), Mr. Lance needed to show that "the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). But the sheriff has never challenged the evidence of causation on the failure-to-train claim.

22

evidence that the county hadn't trained employees how to determine "the immediacy of medical complaints," particularly when medical personnel were away from the detention center. A reasonable factfinder could infer that this deficiency in the training was both obvious and closely related to Mr. Lance's injury.

The former sheriff testified that county employees had taken courses in first aid and CPR, had shadowed more experienced employees, and had attended monthly safety meetings. But Mr. Lance presented evidence that the employees had obtained no training on when to call a nurse or a doctor when one was not on site. For example, two officers (Edward Morgan and Daniel Harper) reported that they had not obtained any training on when a medical condition involved an emergency. Edward Morgan testified:

> Q. Was there any training that you were provided in being able to assess the inmates from a medical standpoint?
>
> A. No, sir, none.
>
> Q. Are the jailers allowed to independently determine whether a medical issue is serious?
>
> . . . .
>
> A. Yes.
>
> Q. Okay. And you'd agree that there's no training that provides them the ability to assess somebody independently, right?
>
> A. Correct. Yes, sir.
>
> Q. Would that be the same for the sergeant also?

23

A.    Yes.

Appellees' (Daniel Harper, Dakota Morgan, & Chris Morris) Supp. App'x

at 144.[5] Given this evidence, the factfinder could reasonably infer that the

county had provided deficient training on how to detect a medical

emergency.

On the third element, the plaintiff must show deliberate indifference.

*See* p. 22, above. Deliberate indifference can exist when a county fails to

train jail guards on how to handle recurring situations presenting an

obvious potential to violate the Constitution. *Allen v. Muskogee*, 119 F.3d

837, 842 (10th Cir. 1997). But how can we tell, after the fact, that a

---

[5]    In responding to the summary-judgment motion, Mr. Lance also
submitted this deposition testimony from Stephen Sparks on the lack of
training:

> Q.    Are the individual jailers allowed to independently
> determine whether somebody is going through a serious
> medical event?
>
> A.    No.
>
> Q.    And why not?
>
> . . . .
>
> [A.]: Because we didn't have the proper training to determine
> whether it was a serious emergency or not.

Deposition of Stephen Sparks, *Lance v. Pittsburg Cty. Bd. of Cty.
Comm'rs*, No. 6:17-cv-00378-RAW (E.D. Okla. 2019), ECF No. 172, Ex.
18, at 27. But this deposition excerpt does not appear in the appellate
appendices.

24

problem would recur often enough to require training? *See Carr v. Castle*, 337 F.3d 1221, 1230 (10th Cir. 2003) (discussing "the omniscience of hindsight" to determine whether additional training could have helped police officers in an encounter). Given the difficulty of answering after the fact, the Second Circuit Court of Appeals has devised a three-part test:

1.    [T]he county's policymakers know "'to a moral certainty' that [their] employees will confront a given situation."

2.    "[T]he situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult."

3.    "[T]he wrong choice . . . will frequently cause the deprivation of a citizen's constitutional rights."

*Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)); *see also Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (same test).

We are persuaded by the logic of this test, for it provides a sensible, workable way to determine whether a particular problem is likely to recur enough to alert county officials to an obvious deficiency in the training. In applying the three-part test, we conclude that a factfinder could reasonably infer deliberate indifference.

First, a factfinder could reasonably determine that county policymakers had known "to a moral certainty" that jail guards would need to independently assess detainees' medical conditions. The only medical

25

professional on site was a nurse, who worked 8–5 during the workweek. But medical emergencies will obviously occur sometimes on evenings and weekends, when the nurse was off duty. Given the inevitability of medical emergencies after hours, jail guards would frequently need to decide whether a medical condition warranted an after-hours call to the nurse.

Second, a factfinder could reasonably determine that training would have helped jail guards make the difficult decision of whether to call the nurse when she was off duty. The defendants themselves underscore the difficulty of deciding whether to call the nurse when detainees complain of pain after hours and on weekends. For example, Edward Morgan and Mike Smead argue on appeal:

> A generalized and inherently private and subjective sensation, like pain, is difficult to posit as a "condition" of which others are to be aware . . . . Pain is also variable with limited passage of time and variable with individuals, in terms of pain tolerance and anxiety or reaction to pain.

Appellees' (Edward Morgan & Mike Smead) Resp. Br. at 30.

Given the difficulty of assessing the seriousness of a pain complaint, jail guards were directed to notify the shift sergeant whenever a medical problem arose that might require the nurse's involvement. Appellant's App'x vol. III, at 644; *see also* Appellees' (Chris Morris, Daniel Harper, & Dakota Morgan) Resp. Br. at 50 (arguing on appeal that "jailers were required to submit [detainees'] medical request form[s] up their chain-of-command, i.e., to their shift sergeant").

26

But the sergeants themselves lacked training on how to make the difficult decision of whether to contact the nurse. For example, Mr. Smead was a sergeant who urged summary judgment based in part on his own lack of medical knowledge on whether a condition would constitute a medical emergency:

> [Mr. Smead][6] was a Sergeant, a shift supervisor jailer, and not a medical professional. He cannot be imputed with medical knowledge. Apart from the obvious medical emergencies, such as excessive bleeding or someone unconscious, it was not his decision whether something constituted a medical emergency or required medical care. He was not certain on the timeframe of when a persistent erection could become harmful or a medical emergency.

Appellant's App'x vol. I, at 200 (citation omitted). And Mr. Smead argues on appeal that "[i]n 2016, [he], as a layperson sergeant, did not have an informed or medically correct understanding of how long an erection could persist before it was harmful or a medical emergency." Appellees' (Edward Morgan & Mike Smead) Resp. Br. at 4–5 (citing Appellees' (Edward Morgan & Mike Smead) Supp. App'x at 133); *see also id.* at 20 (Mr. Smead arguing on appeal that he "did not know how long an erection could persist before it thereby became a medical emergency").

---

[6]     The motion says "Morgan" rather than "Smead," but the name reflects a typographical error. The motion was Mike Smead's, not Edward Morgan's. The same counsel represented both Mike Smead and Edward Morgan, and a similar statement appears in Edward Morgan's motion for summary judgment.

Third, a factfinder could reasonably determine that the jail guards' lack of training would frequently lead to disregard of serious pain complaints, violating detainees' constitutional right to medical care. Here, for example, Mr. Smead testified that he would regard a lengthy erection as a medical issue after one or two days. Mr. Smead's standard departs from the medically informed view, for the urologist testified that medical attention was necessary when Mr. Lance's erection had persisted for four hours. Even the former sheriff admitted that he would "want to joke about" a detainee's priapism lasting multiple days. Appellees' (Daniel Harper, Dakota Morgan, & Chris Morris) Supp. App'x at 97. A factfinder could thus reasonably infer that constitutional violations would frequently occur because jail guards would mistakenly choose not to call the nurse when detainees complain of a subjective sensation like pain.

For these reasons, we conclude that the district court erred in granting summary judgment to the sheriff on the failure-to-train claim.

### B. The Policy Requiring Release Before Further Hospitalization

Mr. Lance also challenges the grant of summary judgment on his claim involving the county's policy on release before further hospitalization. Mr. Lance maintains that he presented evidence on each of the three elements: (1) a county policy or custom, (2) causation, and (3) deliberate indifference. *Waller v. City & Cty. of Denver*, 932 F.3d

28

1277, 1283–84 (10th Cir. 2019); *see* p. 22, above. The sheriff challenges the existence of evidence on each element.

For the first element, the plaintiff points to evidence that a physician directed guards to take Mr. Lance directly to a hospital about 90 miles away, where a urologist was waiting to operate. The county argues that this evidence conflicts with the physician's discharge form. But this conflict creates a fact issue, which we must resolve favorably to Mr. Lance on summary judgment. *See* Part 4, above.

Mr. Lance also presents evidence of the policy itself, explaining that the county would not allow transfers of detainees from one medical facility to another. The county instead required detainees to be returned to the detention center for release on their own recognizance.

For the second element, Mr. Lance observes that this policy delayed needed treatment from a specialist. After unsuccessful treatment at the local hospital, county employees returned Mr. Lance to the detention facility at about 1:00 p.m. Roughly 6 hours later, Mr. Lance finally arrived at the second hospital. Mr. Lance testified that his pain had intensified during this 6-hour period.

For the third element, Mr. Lance contends that the policy showed deliberate indifference. We agree. The factfinder could reasonably infer that delays in specialized treatment would inevitably result from the county's policy. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th

Cir. 2002) (stating that a municipality is deliberately indifferent when it obtains actual or constructive notice that an action is substantially certain to cause a constitutional violation and the municipality chooses to disregard this risk).

The sheriff disagrees, arguing that the county had policies in place to ensure appropriate medical care from outside sources. For this argument, the sheriff cites testimony from the nurse that

- she did not believe that Mr. Lance had needed immediate transportation to the second hospital and

- officials decided on a case-by-case basis whether to release inmates from the jail.

The sheriff's argument does not support the grant of summary judgment. Although the policy may have been applied differently in other circumstances, a factfinder could reasonably attribute the delay in Mr. Lance's treatment to the decision to release him rather than take him to the second hospital. *See Ramos v. Lamm*, 639 F.2d 559, 577–78 (10th Cir. 1980) (upholding a finding of deliberate indifference based partly on deficiencies in the prison's resources for transporting prisoners to civilian medical facilities). Mr. Lance languished in pain while he waited for transportation to the second hospital. That pain resulted directly from the jail guards' refusal to drive Mr. Lance to the second hospital.

\* \* \*

We conclude that the district court erred in granting summary judgment to the sheriff on the claim involving a policy requiring release before further hospitalization.

**7.    Conclusion**

We affirm the grant of summary judgment to Edward Morgan in his individual capacity. But we reverse the grant of summary judgment on

- the individual-capacity claims against Mike Smead, Dakota Morgan, and Daniel Harper; and

- the official-capacity claim against Chris Morris.