**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

2701 MOUNTAIN GLEN CT, LLC,
a Colorado limited liability company,

     Plaintiff - Appellant,

v.

CITY OF WOODLAND PARK,
COLORADO; DAVID BUTTERY,
individually and in his official capacity as
the City Manager of the City of Woodland
Park, Colorado; SALLY RILEY,
individually and in her official capacity as
the Planning Director of the City of
Woodland Park, Colorado,

     Defendants - Appellees.

No. 20-1040
(D.C. No. 1:18-CV-00585-PAB-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **BACHARACH**, Circuit Judges.
_____

Plaintiff brought this civil rights case under 42 U.S.C. § 1983, claiming that

the City of Woodland Park, Colorado (City) had imposed unconstitutional conditions

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

on the use and development of plaintiff's property. The district court determined the applicable statute of limitations barred the claim. It therefore granted summary judgment in favor of the defendants. Plaintiff has appealed. We affirm, partly on alternate grounds.

## BACKGROUND

For over ten years, plaintiff's owner and principal, Garland McClung, has operated an auto repair shop on land located in Woodland Park. Because this property is zoned within a "Community Commercial District," plaintiff must obtain a Conditional Use Permit (CUP) from the City to conduct business there. In 2005 the City enacted an ordinance that granted plaintiff the required CUP for the auto repair business. This CUP was conditioned on plaintiff's payment of a fee so that the City could build a sidewalk, curb, and gutter on City property that bordered plaintiff's property.

The fee requirement was consistent with provisions of the City's Municipal Code, which requires the owner of property within a Community Commercial District to construct sidewalks, curbs, and gutters along its property boundaries. The Municipal Code further provides that the City may approve the payment of a fee in lieu of this construction "in an amount equal to the actual cost of construction of all required sidewalk, curb and gutter improvements as determined by the city engineer." Aplt. App., Vol. I at 190.

2

Plaintiff paid the $13,527 fee and the City approved the 2005 CUP. Plaintiff continues to operate its business. But the City has yet to build any sidewalks, curbs, or gutters along plaintiff's property.

In 2014, plaintiff sought to expand its business to include car sales. To do so, it purchased the lot immediately adjacent to its automotive repair shop and applied for another CUP for that lot. The City enacted an ordinance approving the additional CUP. The 2014 CUP required plaintiff to install sidewalk, curbs, and gutter from the automotive entrance of its new lot to the boundary of its original lot. It also required the City to construct approximately sixty feet of sidewalk, curbs, and gutter from the new lot's property line to the original lot's driveway. The City was to pay for its part of the construction with a portion of the fees in lieu it had collected in connection with the 2005 CUP.

In 2016, the City advised plaintiff that it wanted plaintiff to arrange and pay for both plaintiff's and the City's portions of the sidewalk as described in the 2014 CUP, and to then seek reimbursement from the City for the City's portion of the work. Although plaintiff objected to this procedure, it obtained a bid to construct all the sidewalks, curbs, and gutters that the 2014 CUP required. But when plaintiff submitted this bid to the City, the City rejected it as too costly.

In November 2016 the City amended the CUP to extend plaintiff's time for compliance by one year, and to provide plaintiff with the option of paying a fee to the City to construct the sidewalk improvements. Later that month, plaintiff informed the City that it would not construct the improvements. Plaintiff took the position that

3

the City's demand for sidewalks, curbs, and gutters along the second lot violated the Takings Clause of the Fifth Amendment. Neither the City nor plaintiff has constructed the sidewalks, curbs, and gutters for either lot, and plaintiff has not paid the fee in lieu of the construction required by the 2014 CUP.

After the City issued plaintiff a notice of violation of the 2014 CUP, plaintiff sought and obtained an extension of the CUP through December 18, 2018. Plaintiff then filed this suit against the City and related defendants on March 9, 2018. In its complaint it asserted that forcing it to construct sidewalks, curbs, and gutters in an area with no sidewalks and little pedestrian traffic did not serve a legitimate government purpose, and that there was no essential nexus or reasonable connection between development of the second lot and the requirement that plaintiff either construct sidewalk improvements for the lot or pay a fee in lieu of such construction. Plaintiff alleged that by imposing unconstitutional conditions on plaintiff's development and use of its property, the City had deprived it of its Fifth Amendment rights.

The district court granted the defendants' motion for summary judgment. It reasoned plaintiff's § 1983 claim was governed by Colorado's two-year statute of limitations for personal injury claims. *See Ullery v. Bradley*, 949 F.3d 1282, 1287-88 (10th Cir. 2020) (Colorado's two-year statute of limitations for personal injury actions applies to § 1983 actions arising within that state). Federal law controls the calculation of the date when a claim accrues. *See id.* at 1288. Under federal law, "[a] civil rights action accrues when the plaintiff knows or has reason to know of the

4

injury which is the basis of the action." *Id.* (internal quotation marks omitted). The parties do not disagree with these general principles. Applying this standard, the district court determined that the claim accrued in 2014, when the City first placed conditions on the approval of the 2014 CUP for the second lot, but Plaintiff did not file its claim until 2018. The district court therefore found the statute of limitations barred plaintiff's claim.

## DISCUSSION

We review the grant of summary judgment on statute of limitations grounds de novo, applying the same standards applicable in the district court. *See Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021). In reviewing a grant of summary judgment, we are not limited to the grounds the district court articulated but "we may affirm on any basis that the record adequately supports," *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1181 (10th Cir. 2019), "so long as the parties have had a fair opportunity to address that ground," *Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1249 (10th Cir. 2020) (internal quotation marks omitted).

The Fifth Amendment to the United States Constitution prohibits the taking of private property "for public use, without just compensation." U.S. Const. amend. V.

But "land-use regulation does not effect a taking if it substantially advances legitimate state interests and does not deny an owner economically viable use of his land." *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 834 (1987) (brackets and internal quotation marks omitted). Thus, a government may place a condition on the use and development of property, without compensation, provided that (1) an "essential nexus" exists between the condition imposed and the asserted legitimate state interest, *id.* at 837, and (2) there is a "rough proportionality" between the condition imposed and the "impact of the proposed development," *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994) (internal quotation marks omitted). A "monetary exaction[]," which requires a citizen to expend money in lieu of giving up a property right, must also satisfy these criteria. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013) (internal quotation marks omitted).

The district court determined that plaintiff knew or had reason to know when the City adopted the 2014 CUP that the sidewalk requirement it imposed "potentially violated *Nollan* and *Dolan* because plaintiff's entire claim revolves around [its] property being in a rural area with little to no pedestrian traffic and therefore not needing a sidewalk." Aplt. App., Vol. III at 636 (internal quotation marks omitted). Thus, plaintiff knew of its injury at the time of the 2014 CUP and its claim was untimely under the two-year statute of limitations. We agree that the amended complaint theorized that the City took plaintiff's property by insisting that plaintiff either pay for or construct an unnecessary sidewalk. *See id.*, Vol. I at 26, ¶ 43-44; 29, ¶ 58. And plaintiff knew or should have known of the City's demand for a

6

sidewalk and the need or lack thereof for a sidewalk in connection with its property in 2014. We therefore agree that the two-year statute of limitations bars this aspect of plaintiff's claim.

But plaintiff has also asserted an additional basis for its claim: that the City's build-a-sidewalk condition was pretextual, lacked a nexus to the City's asserted legitimate state interest, and amounted to nothing more than pure extortion.[1] Plaintiff now concedes the 2014 CUP facially satisfied the nexus requirement, because building a sidewalk serves the City's alleged purpose of protecting pedestrians from the increased traffic created by plaintiff's planned parking lot. *See* Aplt. Opening Br. at 17-18. But it argues that once the City's actions revealed to plaintiff in 2016 that the City had no intention of actually building a sidewalk, and that it just intended to take plaintiff's money, these changed circumstances showed for the first time "that the City's justification for [the fee in lieu option and other changes] was a pretext to obtain money to build unrelated sidewalks elsewhere," which "transformed the sidewalk condition from part of an acceptable bargain in 2014 to a constitutionally unmoored holdup in 2016." *Id.* at 11. Plaintiff explains that because it initially took the City at its word that the sidewalk would be built along its property to protect pedestrians, it did not realize that the City had breached the nexus requirement until 2016. Therefore, it reasons, its 2018 complaint was timely.

---

[1] The parties disagree about when plaintiff began to assert this theory. Given our disposition on an alternate ground, we need not resolve this dispute.

7

Even assuming plaintiff could circumvent the statute of limitations by asserting this "pretext" theory, we affirm summary judgment for a different reason: the facts simply do not support a *Nollan*/*Dolan* claim based on that theory.[2] The theory itself is not implausible. A municipality arguably fails the nexus requirement by advancing a legitimate state purpose that is merely a pretext for some other, unrelated purpose. *Cf. Kelo v. City of New London*, 545 U.S. 469, 478 (2005) ("Nor would [defendant] be allowed to take property under the mere pretext of a public purpose . . . ."). And had the City's actions or statements made it clear that it would simply turn a blind eye to the need for a sidewalk in exchange for a cash payment, that could violate the nexus test. *See Nollan*, 483 U.S. at 837 ("When [the] essential nexus is eliminated, the situation becomes the same as if [an ordinance] forbade shouting fire in a crowded theater, but granted dispensations to those willing to contribute $100 to the state treasury."). But plaintiff has not established the necessary facts to support this theory. The summary-judgment evidence does not show that the City has extorted a fee from plaintiff that "utterly fails" to further the City's stated reasons for constructing a sidewalk adjacent to plaintiff's property. *Id.*

Plaintiff attempts to prove its "pretext" case inferentially. But the proposed inference it seeks to draw is unreasonable based on the facts presented. Plaintiff relies on the City's willingness to accept a fee in lieu from plaintiff (which the City's

_____

[2] The defendants sought summary judgment on the merits of plaintiff's *Nollan*/*Dolan* claim, raising concerns resembling those we discuss here. *See* Aplt. App., Vol. I at 87-90 & n.12. Plaintiff provided a response to these contentions. *See id.*, Vol. II at 305-06.

Municipal Code permits), the City's failure to construct its portion of the sidewalk (yet), and the parties' failure to come to an agreement on the conditions under which plaintiff would perform the construction. Plaintiff further contends the current impasse in completing the construction resulted from the City's extortionate demands.[3] But nothing about the City's negotiating positions would permit a factfinder reasonably to infer that its stated purpose for requiring a sidewalk or payment in lieu was *merely a pretext* for extorting a fee from plaintiff. Plaintiff assumes that even if it pays the fee the sidewalk will never be built, *see* Aplt. App., Vol. II at 299, but this conclusion rests on speculation. And speculation cannot defeat a properly supported motion for summary judgment. *See Alfaro-Huitron*, 982 F.3d at 1249.

As further evidence of the City's (allegedly) entirely pretextual motive, plaintiff points out that the City has collected fees in lieu from at least 13 other property owners since 2000 but has not built sidewalk improvements for those

---

[3] Plaintiff complains that as part of the negotiations, the City required it to pay up front for the City's portion of the sidewalk, which plaintiff had already paid for in 2005, and then be reimbursed. Regardless of whether this "pay up front" requirement was imposed in good faith, it does not support a reasonable inference that the City's construct-a-sidewalk condition was merely pretextual. Plaintiff's owner and principal, McClung, also opined that the City made the sidewalk "*impossible* to complete by rejecting the bid." Aplt. App., Vol. II at 316 (emphasis added). But plaintiff fails to show that rejecting a single bid that the City found grossly excessive supports an inference that the City had made construction impossible. Finally, McClung's subjective impression that the City "had no intentions of putting in the sidewalk, curb, and gutter," *id.* at 319, does not amount to a showing of pretext sufficient to avoid summary judgment.

9

properties with the funds collected. But the City explained that although those fees were placed in the Street Fund and "not specifically earmarked," the Street Fund "at all times contains sufficient funds to pay for the construction of the sidewalks, curbs and gutters for the properties that have paid fees in lieu when such construction commences given pedestrian needs and City growth." Aplt. App., Vol. II at 448. Plaintiff fails to show that *Nollan/Dolan*'s nexus requirement compels the City either to construct sidewalks immediately or pay compensation. In any event, plaintiff is not similarly situated to the other property owners it has identified. It has not paid fees in lieu for the second lot that were deposited into the Street Fund.[4] The record shows that far from simply collecting a fee and postponing the sidewalk project on the second lot indefinitely, the City negotiated with plaintiff for construction of the required sidewalks. The fact that these negotiations have so far proved unsuccessful does not equate to pretext or extortion.

Plaintiff presents several other arguments to support its theory that the limitations period did not accrue until 2016. But because all those arguments rest on its "pretext" theory of liability, and that theory fails on the merits for the reasons we have specified, we need not consider these additional arguments.

---

[4] The fact that plaintiff paid a fee in lieu in 2005 for the sidewalk on the first lot and that this fee was deposited into the Street Fund does not require a different conclusion. Plaintiff does not independently challenge this 2005 exaction. And the City did not simply spend those funds on other projects, so that they became unavailable for construction of a sidewalk adjacent to plaintiff's premises. Instead, the City later offered up the 2005 funds to complete its part of the sidewalk, as required by the 2014 CUP.

## CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Timothy M. Tymkovich
Chief Judge